UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO:

THOMAS SCHULTZ,
  Pro Se (non-attorney) Plaintiff/Petitioner/Removing Defendant

VS.

CITIBANK, N.A.,
  Defendant/Respondent/State Court Plaintiff.

_____/

IN THE COUNTY COURT FOR THE 9TH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA
ORANGE COUNTY CASE NO. 2023-SC-036214-O DIV 77
CASE E-Filed 06/16/2023 - Assigned to JUDGE SANDOR
ORANGE COUNTY CASE NO. 2023-SC-032958-O DIV 70
CASE E-Filed 06/02/2023 - Assigned to JUDGE JOHNSON
ORANGE COUNTY CASE NO. 2023-SC-042459-O DIV 72
CASE E-Filed 7/07/2023 - Assigned to JUDGE DUBOIS
ORANGE COUNTY CASE NO. 2023- expected to be filed to harass

SEE BELOW CAPTION FOR THE IDENTICAL RELATED CASES
BARRED BY SCHULTZ' ELECTION OF MAY 3, 2023 TO ARBITRATE
**COMPLAINTS ABANDONED AS NEVER SERVED**

CITIBANK, N.A., Plaintiff,

vs.

THOMAS SCHULTZ, Pro Se (non-attorney) Defendant.

_____/

## COMPLAINT
### BY SCHULTZ UNDER THE FCRA AND FDCPA
### FOR CIVIL PENALTIES, INJUNCTIVE AND OTHER RELIEF

## PETITION TO COMPEL PRIVATE ARBITRATION
### OF CITIBANK'S BARRED STATE COURT CLAIMS AND CITIBANK'S
### NON-OPPOSITION TO SCHULTZ'S MOTIONS TO COMPEL
### ARBITRATION, FILED 6/20/2023 IN STATE COURT

## NOTICE OF REMOVAL OF STATE COURT ACTIONS

*1 of 91*

Pro Se Plaintiff (non-attorney), Thomas Schultz ("Schultz"), files this Complaint, Petition to Compel Private Arbitration with AAA of any and all accounts of Citibank and Notice of Removal of Action and alleges as follows:

## INTRODUCTION

Schultz voluntarily closed 9 credit card accounts with Citibank 2 years ago in June/July 2021 due to what Schultz considered fraudulent and deceptive bait and switch practices. Despite making all timely payments, a dispute arose in September 2022 which continues to this date due to Citibank's continuous willful violations of the FCRA and the FDCPA involving numerous Complaints to the Consumer Financial Protection Board (CFPB), Experian, Equifax, TransUnion and Citibank for which Schultz is entitled to statutory and punitive damages far exceeding any claims of Citibank. Schultz received notices in April 2023 from 2 debt collectors for Citibank for which Schultz filed multiple 30 page Debt Validation Notices on May 3-5, 2023 through the CFPB portal for Citibank's response, prohibitions and obligations, including a cease and desist notice and a **repeated demand, election and choice of Arbitration pursuant to the clear arbitration agreement, where Arbitrators rule on arbitrability, not courts or judges under the Florida Supreme Court March 31, 2022 case no SC20-1167 decision *Airbnb v. Doe* filed as an attachment with the state court on 7/6/2023 in further support of Schultz's Motion to Compel Mandatory Private Arbitration with the AAA ...   By demanding, chosing and electing arbitration in writing, Citibank was limited and required to solely ministerally file a few pages and pay the arbitration fees to AAA as it was barred from any court action due to the choice of arbitration**.   However, Citibank wrongfully filed 2 county court actions on June 2, 2023 and June 16, 2023 for which Schultz has never been served but received notices from attorney advertisements. Citibank, also filed an identical 3rd case against Schultz on July 7, 2023. **Schultz filed comprehensive Motions to Compel Arbitration on 6/20/2023 with various supplements clearly documenting that the state court must compel arbitration and the litigation is automatically stayed by operation of law until the Motion is decided at which time an appeal is permitted further staying proceedings.   Citibank was barred from filing any case in state court, mandatting dismissal as sought by Schultz, and the state court is automatically stayed from proceeding.   Schultz will be irreparably harmed by the refusal of the state court to rule on the Motion and permit violations of its automatic stay.   The dispute, including the Motion to Compel arbitration clearly demonstrates that the credit card dispute involves FCRA and FDCPA for**

which this Court has subject matter jurisdiction for this Complaint, the Petition to Compel Arbitration and the Removal from state court.    Schultz asks this Court to rule on his fully briefed unopposed Motion to Compel Arbitration and Dismiss the barred state court action as unserved and barred by the election to arbitrate.    Schultz also petitions this Court to compel Citibank to immediately arbitrate each of Citibank's state court case claims, and any other of its 7 claims, in separate private arbitration cases with AAA requiring Citibank to pay 100% of the arbitration fees as required by contract. Since Citibank filed multiple state court claims, it is only right that Citibank file multiple arbitration cases with multiple judges to prevent gaming the court system again. Schultz incurred substantial emotional tangible injury including, loss of sleep, emotional distress, extreme stress, frustration, anger, agitation and anxiety including the tangible "lost time" and expenses involved due to Citibank's actions which took over Schultz's life for trying to correct inaccuracies on credit reports for almost a year. (See Toste v. The Beach Club at Fountainbleau Park Condo Ass'n No 21-14348 (11th Cir decided Sep 7, 2022). Schultz is entitled to statutory and punitive damages of $500,000 due to Citibank's never ending wilfull FCRA, FDCPA and other violations and misconduct set forth herein.

## JURISDICTION

This is an action arising under, inter alia, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, to obtain monetary civil penalties, statutory damages, punitive damages, actual damages and attorney's fees and costs, permanent injunctive relief, and other equitable relief for Citibank's violations of the FCRA, (which imposes duties upon consumer reporting agencies and those who furnish information to a consumer reporting agency ("CRA") or use information obtained from a CRA) and the FDCPA, 15 U.S.C. §§ 1692-1692p, (which imposes duties upon debt collectors), and other unconscionable conduct.    This Court has jurisdiction over this matter under 15 U.S.C. § 1681p which states: "An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy..." This Court also has jurisdiction over this matter under 15 U.S.C. § 1692k(d) "§ 1692k - Civil liability...(d) JURISDICTION    An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy..." This Court has jurisdiction over this matter under 28 U.S.C. § 1331 "Federal question    The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 15 U.S.C. §

3

1681o states: "Civil liability for negligent noncompliance (a) In general   Any person who is negligent in failing to comply with any requirement imposed under this subsection with respect to any consumer is liable to that consumer in an amount equal to the sum of--(1) any actual damages sustained by the consumer as a result of the failure; and (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attoneys fees as determined by the court..."   15 U.S.C. § 1681n states: "Civil liability for willful noncompliance (a) In General   Any person who willfully fails to comply with any requirement imposed under this subsection with respect to any consumer is liable to that consumer in an amount equal to the sum of -- (1) (A) any actual damage sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000 which ever is greater; (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. (b) CIVIL LIABILITY FOR KNOWING NONCOMPLIANCE Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000 whichever is greater. ..."   15 U.S.C. § 1681q states: "Obtaining information under false pretenses   Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title18, imprisoned for not more than 2 years, or both."    This Court has jurisdiction over this matter under 15 U.S.C. § 1692k(d) "§ 1692k - Civil liability...(d) JURISDICTION   An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy..."   15 U.S.C. § 1692k - Civil liability further states in relevant part:   "(a) AMOUNT OF DAMAGES   Except as otherwise provided by the section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of -- (1) any actual damage sustained by such person as a result of such failure; (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; ... (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's.fee as determined by the court..."   28 U.S.C. § 1331 "Federal question   The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

4

treaties of the United States." 28 U.S.C. § 1332 "Diversity of citizenship; amount in controversy (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- (1) citizens of different States; …( c)    For the purposes of this section and section 1441 of this title-- (1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…" .

## PARTIES

Schultz is a citizen of the State of Florida residing at 8919 Heritage Bay Circle, Orange County, Orlando, Florida 32836.    Schultz is a consumer and individual as defined by 15 U.S.C. § 1681a et seq.    Citibank, N.A. is a citizen of the State of New York with its principal place of business in New York, NY.    Citibank, N.A.'s recent United States Securities and Exchange Commission Form T-1 discloses Citibank's address of principal executive office as 399 Park Avenue New York, New York with the Name, address and telephone number of its agent for service disclosed as "Citibank, N.A. 388 Greenwich Street, 14th floor New York, NY 10013 (212) 816-5805" . Citibank has been hired the third party Debt collector, RAS LAVRAR, LLC, who filed at least 3 barred and prohibited state court actions instead of filing the required demanded arbitration agreements.    Citibank's debt collector and counsel of record in the state court cases for purpose of service is RAS LAVRAR, LLC, Flynn LaVrar, Esq., Jennifer K. Klein, Esq. 1133 S. University Drive 2nd floor, Plantation, Florida 33324.

## VENUE

Venue is proper in this United States District Court for the Middle District of Florida Orlando Division under 28 U.S.C. §§ 1391(b)-(c), as the acts and transactions that give rise to this action occurred exclusively, or in substantial part, in this district.    All conditions precedent to the bringing of this action have been performed.

**SCHULTZ'S NOVEMBER 21, 2022 23 PAGE DISPUTE AND EMERGENCY RELIEF FOR WIDESPREAD INTENTIONAL, WILLFUL AND DELIBERATE DISCRIMINATION - DECEPTIVE TRADE PRACTICES - FCRA VIOLATIONS ETC BY CITIBANK AND PARROT CREDIT REPORTING AGENCIES (Sent and received by certified US Mail return receipt requested)**

5

Citibank Discrimination - Hurricane Ian/COVID-19 & FCRA intentional violations

Thomas Schultz
8919 Heritage Bay Cir
Orlando, Florida 32836

November 21, 2022

Consumer Financial Protection Bureau (CFPB) Via certified U.S. mail RRR
1700 G Street, N.W.
Washington, DC 20552

Trans Union Consumer Relations
(TransUnion). Via certified US mail RRR
P.O. Box 2000
Chester, PA 19016-2000

Equifax Information Services L.L.C.
(Equifax). Via certified US mail RRR
P.O. Box 740241
Atlanta, GA 30374

Experian NCAC
(Experian). Via certified US mail RRR
P.O. 2002
Allen, TX 75013

Citibank Billing Dispute
(Citibank). Via certified US mail RRR
P.O. Box 6013
Sioux Falls, S.D. 57117

Citibank Acct #
5424 1814 2369 9987
5424 1812 0021 4067
5285 4600 7193 3999
5466 1603 3077 9131
5424 1813 1642 1861
5466 1603 4619 8334
5424 1813 5088 2556

Re: DISPUTE and Emergency Relief for widespread intentional, willful and deliberate Discrimination-Deceptive Trade Practices-FCRA violations etc by Citibank and PARROT credit reporting agencies to avoid irreparable harm for myself and credit card holders similarly situated

Discrim 1 of 23

6

I write to formally DISPUTE my 7 Citibank credit cards due to Citibank's
DISCRIMINATION against me and disabled and other credit card holders of my class similarly
situated and Citibank's Deceptive Trade Practices. I was in the direct path of the September 2022
Hurricane Ian in Orlando Florida which area was declared a natural disaster zone by FEMA and
President Biden for which Citibank and most other lenders publicly and privately offered (and I
affirmatively accepted) debt relief including but not limited to 3 months or more payment deferrals.
I have been seriously affected by Hurricane Ian. In addition, at the same time as the hurricane, I
was further impacted by COVID-19. Moreover, I have had a disability for 5 months due to
intentional concealed medical malpractice. In fact, during the day before Hurricane Ian, my
important scheduled medical procedure was cancelled as the entire State of Florida shut down. To
make matters worse, my checking account was entirely drained through 10 online negligently
approved fraudulently DEBIT card transactions approved by my bank without the necessary
credentials such as expiration date, security code, name, address, zip code, etc. My debit card was
never used, never outside my home and securely placed in my exclusive possession so that
fraudsters merely guessed at an account number (or got account number from a bank hack) which
was negligently approved without any other credentials. In addition, I have had a large insurance
claim from a credit card insurance policy delayed unreasonably for 4 months despite 60+ pages of
documents I submitted and no processing by insurance processors. Further, I have pending credit
card disputes for clear medical malpractice which has been unresolved despite credit lender
required action which has expired and unadjusted in willful violation of the Fair Credit Reporting
Act (FCRA), the Fair Credit Billing Act (FCBA), etc. Quite simply, businesses fail to meet
statutory obligations by inaction, policies and lack of staffing. If a state with 1,000,000 voters has
only 1 person to process votes, nothing gets done. If a gas station has no working gas dispensers,
long lines or lack of customers will result. If a hospital emergency room has no staff, sick people
will not get needed service. Without needed staff and procedures, consumers never receive offered,
promised or required services. I have spent more than 40 days constantly calling for hours on the
phone each time with Citibank to obtain its publicized and admitted 3 month payment deferral of
$0 per month. However, Citibank has purposely made it impossible to get payment deferrals
approved and processed due to Hurricane Ian and/or COVID-19. I have a perfect payment record
with Citibank and every credit card lender with a 100% payment record but Citibank's lack of
staffing and systems may cause further inaccurate credit reporting and a possible detrimental but
inaccurate LATE Payment. I have constantly called Citibank in a good faith effort to obtain a 3

D-2

7

Month deferral of payments I am entitled to but Citibank acknowledges that all clients affected in the path of Hurricane Ian are entitled automatically to a 3 month payment deferral but Citibank has refused to enter my requested approval in its system. Citibanks knows that it's policy of wasting customer time on the phone is intended to discourage cardholders from requesting payment deferrals. Essentially, Citibank has purposely DISCRIMINATED against me and members of my class by refusing to enter payment deferrals into its system claiming frivolous excuses such as glitches and other fraudulent discriminatory and deceptive practices. Not only has Citibank reported inaccurate dates and data to credit reporting agencies which I dispute every entry herein in their entirety but despite $0 payments due to the automatic Hurricane deferrals, Citibank deducted minimum 7 separate monthly payments in October from my Social Security checking account over my objections and Citibank refuses to return my Social Security withdrawals wrongly deducted and process my 3 month payment deferrals so that my credit reports will accurately and clearly contain scheduled monthly payments of $0. At each and every phone communication with Citibank since Hurricane Ian, I formally and clearly disputed all of its data and information claiming it is inaccurate under the FCRA etc and I would file disputes with credit reporting agencies (CRA) and the Consumer Financial Protection Bureau (CFPB) to address obvious FCRA and other violations. However, in violation of the FCRA. Citibank never reported any of my 7 accounts as DISPUTED and the 5-day deadline and time to do so expired months ago. Again, I have a perfect payment record with Citibank and all other creditors but I insist on receiving, at a minimum, the 3 month payment deferrals agreed to by Citibank both publicly and privately. Citibank has not only wasted my time to induce me to pay but Citibank has threatened me with false, inaccurate, retaliatory and illegal reporting to credit reporting agencies. I have told Citibank on each and every call that I dispute payments as I am entitled to Hurricane Ian and COVID-19 deferral mandates (offered and accepted) and I would file a complaint with credit reporting agencies and the CFPB (and other authorities) unless Citibank fulfills its acknowledge obligation to grant me a Hurricane Ian and/or COVID-19 3 month payment deferral. Citibank has violated the FCRA by failing to report my accounts on my credit report as DISPUTED with CRAs within the short 5 day deadline. Citibank acknowledged that it has extensive experience in payment deferrals back in 2020-2022 so its computers were able to easily process Hurricane Ian deferrals. However, Citibank has obviously made the illegal and discriminatory action to prevent card members from obtaining 3 months of payment relief which relief must be reasonably DEEMED AUTOMATIC without inquiry or investigation of the facts. I never requested COVID payment relief or deferrals in 2020 but I have

D-3

rather made all of my payments. Affected cardmembers should not be required to spend 10-30 hours on the phone for each account to insure receipt of promised 3 month payment deferrals. Rather, cardmembers should be expected to receive AUTOMATIC 3 month deferrals processed into an accurate easy to understand system. The DiSCOVERCARD gave me and all affected cardmembers automatic payment deferrals clearly designating $0 in monthly payments without inquiry and jumping through hoops. Citibank would rather pay employees 20 hours rather than simply grant promised relief. Citibank has alienated the public and wasted costs of its employees. My 3 month publicized and admitted payment deferral is AUTOMATIC and UNCONDITIONAL and any efforts by Citibank to continue to EXTORT payments constitutes intentional, willful and deliberate violation of the FCRA, FCBA, and other statutes to mention a few. I am being purposely discriminated against and Citibank's deceptive and discriminatory practices of forcing me to make payments higher than other affected disaster victims will not be tolerated. Even though I am educated, I have been unable to get any smart Citibank employee to take responsibility for its actions. I feel sorry for less educated cardmembers or people who do not have English as a first language who are unable to get mandated relief from Citibank. Immediate and permanent DELETION of my Citibank accounts from my credit reports is necessary to prevent further false data reporting and to avoid false and illegal reporting of late payments to damage my 100% payment record. CRAs must take notice that it cannot trust Citibank and other creditors to report accurate data and it must do its own detailed, independent and unbiased reinvestigation instead of just PARROTING data from creditors. At this point, It is necessary to point out that I have received my 3 credit reports and all data is incorrect, inaccurate, incomplete, false, misleading … and unclear mandating DELETION of ALL of my 40+ CLOSED accounts, all of which are also impacted by Hurricane Ian and COVID-19. For example, let's say I made a minimum payment of $300 on August 26, 2000. My reports would state inaccurate dates such as 9/1/22, 8/1/22, 8/14/22, 9/12/22, 08/22. 09/22, 2021, 2022,——, blank, or some other false date of payments. Every account has false payment dates so all accounts must be DELETED and at a minimum exact dates of payments from lenders must be disclosed to me by the credit reporting agencies after dispute investigation so that I can have all data in possession of the credit reporting agencies for the appropriate AUDIT. I am entitled to 3 month payment deferrals due to Hurricane Ian and COVID-19 and my request and disputes were given to all my Closed accounts as disputed for the same reasons as Citibank. One bank even has a special Hurricane Ian number which has never been answered. My paper credit reports from Experian, Equifax and TransUnion are inaccurate as the

D-4

9

dates I made payments are inaccurate. I monitor my credit reports daily and the detail for each account clearly states EXACT dates of last payments, such as 09/1/22, 09/2/22, 09/3/22, 09/4/22, 09/5/22,…09/14/22…09/15/22…09/22/22…09/29/22..10/1/22, 10/2/22…10/15/22 etc. This clearly demonstrates that Credit reporting agencies have EXACT payment dates and EXACT payment amounts in their systems submitted by lender furnishers which I claim are virtually all inaccurate to boot. When I asked for and received my recent 3 paper credit reports, I was entitled to received the EXACT contents of my credit file which includes exact payment dates which is certainly in the systems of the credit reporting agencies based on reports from credit monitoring firms. Stated in another way, if furnishers report a payment on 09/12/22 and credit reporting agencies report 09/12/22 to credit monitoring companies, then my PAPER credit report MUST state 09/12/22 without exception and any other form of conflicting date such as 2022, 09/22, 09/2022, 08/22, 08,2022 etc on my paper credit report constitutes incorrect, inaccurate, false, misleading, confusing, unverifiable, etc data. I insist that my paper credit reports contain every piece of information that reporting agencies maintain and made available to others such as lenders, monitoring firms, etc. Therefore, it is clear that credit reporting agencies have multiple systems for data such that consumers are NOT disclosed the required available contents available to others. I am SHOCKED but not surprised 200+ million consumers obtain credit reports which all incorrectly conceal information available to lenders and credit monitoring firms. I am disgusted that consumers cannot in good faith dispute data in their credit files if the contents are concealed, suppressed or otherwise hidden from consumers. I have carefully examined my 3 paper credit reports and the paper reports show that I have a 100% payment record and there are 0 late payments. However, my credit monitoring services correctly have reported a 100% payment with No late payments however one credit monitoring service reports 1 late payment of 60 days late which is false, impossible, conflicting, inaccurate and damaging and negatively reducing my credit score by 100 points. How can I have a 100% payment record for 10+ years with never being late and at the same time have a 60 day late derogatory entry? It is impossible!!! Inaccurate, incorrect, false, incomplete…!!! Well the answer may be that false and incorrect and inaccurate date is maintained in credit reporting agencies files available to its customers but illegally concealed from consumers making it impossible to verify accuracy and dispute crefit reports in direct violation of the spirit of the FCRA and other statutes. This is a matter ripe for investigation and injunction by the CFPB to protect consumers. I dispute each and every CLOSED accounts in their entirety for containing incorrect and other conflicting or concealed data and demand DELETION of all Closed

D-5

/0

account in their entirety pending investigation and permanently after conclusion by the CFPB. Moreover, I demand all information regarding closed accounts from creditors as required by the FCRA which I will discus herein. Without DELETION, my credit report will be intentionally inaccurate and misleading so the prudent immediate action to prevent further violations is Deletion. In my opinion, my paper credit reports are worthless and I cannot protect my constitutionally protected rights. Again, the CFPB needs to intervene immediately. The last payment date is the most important date required on credit reports for a variety of reasons discussed in Gillespie vs Equifax, 484 F.3d 838. The Court stated, inter alia: "We are troubled our decision is critical of Equifax's disclosures…in light of the requirements of the FCRA…In drawing all justifiable inference in the plaintiffs [consumers] favor…we conclude that Equifax's disclosure to the plaintiffs may be accurate but it is not necessarily clear…[which] can cause significant confusion and uncertainty for the consumer. [and readers of the consumers credit report]…the plaintiff's allege that Equifax's disclosure is not clear and accurate as required under 1681g(a)(1) because Equifax's disclosure does not allow them to determine whether Equifax is properly calculating the seven and one-half year limitation….A primary purposes if the statutory scheme provided by the disclosure in 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under 1681j. We conclude that the consumer reporting agency must do more than simply make an accurate disclosure of the information in the consumer's credit file. The disclosure must be made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in her credit file. In writing1681g(a)(1), Congress requires disclosure that is BOTH "CLEARLY AND ACCURATELY" made. An accurate disclosure of unclear information defeats the consumer's ability to review the credit file, eliminating a consumer protection procedure established by Congress under the FCRA." Obviously, my credit reports have concealed important information which I cannot verify to protect my rights to dispute unknown and concealed data. My credit reports are certainly NOT "CLEARLY and ACCURATELY made" and the deliberate concealment of detailed data from my credit report which detail is made available to lenders, monitoring firms and others cannot be tolerated as absurd in in direct violation of the FCRA. My paper credit file MUST be EXACTLY IDENTICAL to data and reports submitted to others such as lenders and credit monitoring firms, without exception. No brainer!!! What is going on!! What about offered payment deferrals!! What about discrimination and equal treatment!! Who is

D-6

//

controlling credit reporting when 200+ million consumers do not know what is in their
CONCEALED files!! Consumers cannot identify inaccurate data due to concealment! My credit
file shows a perfect 100% never late payment history for 10+ years but credit reporting agencies
have concealed a FALSE incomprehensible inaccurate negative 60 day late payment that is
concealed from my paper credit making it impossible to dispute concealed inaccurate and unkind
data. Having been denied access to my concealed credit file, complete DELETION of all data from
closed accounts is required without delay. Again, the CFPB must enjoin reporting agencies from
maintaining multiple sets of different data in credit files concealed from consumers. Credit
furnishers and credit reporting agencies knew or should have known that multiple incorrect and
different sets of credit files are maintained so that consumers cannot obtain accurate and complete
reports of data. DELETE my closed credit accounts permanently before the CFPB or others seek
relief for intentional FCRA violations for maintaining multiple sets of conflicting books. I need to
see ASAP all the set of books maintained by the credit reporting agencies as my paper credit files
are not inclusive of data available to others. 15 USC 1681 states: "A person shall not furnish any
information relating to a consumer to any consumer reporting agency if the person knows or has
reasonable cause to believe that the information is inaccurate." My entire conflicting multiple credit
fileS are known or should have been known to be incorrect especially for the inaccurate deferred
payments needed to be disclosed on every account. If my payments required due to Hurricane Ian
and COVID-18 are $0 for 3 months, the false reporting of scheduled or required payments, such as
$100 or $500, is inaccurate. If I have 7 account with $0 required payments submitted to credit
agencies as 7 amounts totaling $1,000 instead of $0, such inaccurate payment furnishers data
constitutes 7 separate and distinct FCRA violations subjecting furnishers for up to $1,000 per
violation which, in my case, would automatically extinguish any purported debt by Citibank.
Absent, permanent deletion of all of Citibank's accounts from all my credit reporting agency files, I
will proceed to extinguish debt, voluntarily or involuntarily through multiple grievance avenues
including the United States District Court in Orlando against all violators. This entire matter is a
disaster and now is the time to mitigate damages as a prudent financial decision

by permanently DELETING all my Citibank and other closed accounts. Obviously, I feel
defrauded by Citibank and other RECALCITRANT lenders who, in the face of the CFPB,
challenge it's authority and refuse to process automatic promised payment relief from Hurricane
Ian and COVID-19. Citibank has been advised that I dispute payments due to IAN and COVID but
Citibank seeks to destroy my perfect payment record by harassment due to my submitting my

D-7                                                                                                              12

automatic rights and dispute filing never acknowledged by Citibank to reporting agencies. To make matters worse, Citibank has failed to include the required address for filing disputes in its monthly PDF billing statements, including address for disputes under the FCBA. On 10/6/2022 at 9:02 am, I spoke with a Citibank supervisor and she could not tell me the correct address for filing disputes and she could not explain why a dispute address was absent from all my monthly statements. After detailed conversations, I was given conflicting and multiple addresses including Box 6077,6013 and 6244. I am sending this complaint and dispute to Box 6013 as the supervisor said it was best address for this matter. Nonetheless, I clearly disputed monthly payments to Citibank yet Citibank refused to report any of my 7 accounts as disputed as required for all accounts nor provide an address for disputes with certainty. The CFPB requires deletion without lender proof in detail further stating: "if you remain confused about what the furnisher is going to do with your account, you can submit a complaint with the CFPB and if you haven't already, you should submit a dispute about the account to the credit reporting companies as well." Well I am well educated in business related issues yet I am completely CONFUSED how I am being deliberately discriminated and treated unfairly by Citibank' lack of staffing of any level to address straightforward issues regarding Hurricane Ian, COVID-19 and FCRA requirements. Obviously, Citibank will never admit wrongdoing or look at disputes in an unbiased manner as Citibank is solely concerned in cost reductions rather than payment reductions it widely offered publicly to authorities and consumers. Since Citibank will most likely just falsely deny a dispute without the appropriate required level of factual investigation with legal and good faith inquiry, the CFPB must do its own DE NOVO detailed examination to protect the hundreds of millions of consumers similarly affected. Since Citibank unilaterally wrote all loan documents and public offerings to provide payment deferrals of 3 months due to consumers in the path of Hurricane Ian and COVID-19, any review must be considered in the light most favorable to consumers as all documents and terms were WRITTEN and Agreed to by Citibank without involvement with consumers. To properly review my dispute, I require and request all documents of my contract terms, all communication from Citibank to authorities or others, and copies of a written transcript of all my calls with Citibank since Mid September 2022. Of course, this documentation is required to be analyzed by consumer reporting agencies and provided for response by a consumer. The CFPB requires deletion of inaccurate and unclear data without all discoverable documents which I request herein. Rather than give consumers payment deferrals of $50, Citibank would rather spend $1,000 to answer phones improperly and threaten consumers with destruction of credit reports forcing consumers to stop

D-8

/3

payments and litigate. Further, computer processing difficulties cause further complications as noone knows how to code for matters not routine. I will not tolerate a mere denial of my dispute by Citibank and/or credit reporting agencies absent a comprehensive Federal District Court type of statement of facts and conclusion with a memorandum of law of each and every point mentioned herein. Since Citibank wrote the terms of the contract, providing ARBITRATION, I insist that Citibank be COMPELLED to file for Arbitration before resolving my disputes on my credit report. Thus, Citibank's accounts on my credit reports must be permanently DELETED from my credit report absent completion of ARBITRATION to determine the appropriate reporting of disputed data herein on my credit reports. If Citibank seeks to frivolously destroy my 100% payment history, it should not complain about what it later considers an unreasonable Multiplication of Proceedings through various Federal Courts and Arbitration Proceedings and other costs beside the likely CFPB actions with penalties and sanctions which could be hundreds of million of dollars. This matter is so simple and a perfect case for class action United States District Court litigation for federal jurisdiction reasons relating to, inter Alia, FCRA intentional violations. The CFPB also recommends that consumers should file a Complaint with the CFPB if consumer disputes are IGNORED which Citibank is good at ignoring disputes. Despite multiple disputes with Citibank since Hurricane Ian, I have not received any kind of response that the CFPB requires including (1) identification of the account you dispute; (2) a statement that the dispute has been investigated; (3) a statement that the dispute investigation has been completed, and (4) an explanation of the results of that dispute investigation accounts with incorrect date of last payment, date opened, incorrect current balance, incorrect credit limit, incomplete or inaccurate information. Consumer reporting agencies should just DELETE all Citibank and other closed accounts so it does not get involved into a dispute which could become extremely costing with absolutely no benefits. I have the right to dispute incomplete or inaccurate information. Consumer reporting agencies must correct or delete inaccurate, incomplete and unverifiable information, usually within 30 days. The Federal Equal Credit Opportunity Act (ECOA) prohibits discrimination especially against retaliation where consumers, exercise, in good faith, any right under the Consumer CreditProtection Act, FCRA, FCBA, or any other consumer protection regulation. The Civil Rights Division of the Department of Justice enforces federal laws that prohibit discrimination. The Department may get involved if there is a "pattern of practice" of discrimination for conduct that is discriminated. Prohibited preferential treatment of consumers and prohibited policies of persons against persons with medical and other discrimination are prohibited without equal rights and treatment opportunities. If I am

D-9

14

foreign born, disabled, sick and I seek medical treatment and told to go home and come back another day while providing immediate assistance to others, the Disability Rights Section may get involved. A consumer of a protected group (such as COVID or hurricane victims) is discriminated against for charging higher fees and interest and not providing equal protection and relief according to the same standards. I have requested on multiple occasions about Citibank's discrimination against me and I have asked for a written statement and written explanation via US mail but Citibank has failed to respond as required. I have asked for a written transcript of my calls but none was considered. According to the CFPB, The ECOA makes it illegal for a creditor to discriminate in any aspect of credit transactions, including less favorable credit terms of for example equal qualified people in Florida affected by Hurricane Ian or COVID-19 or to consumers "exercising in good faith your rights under the Consumer Protection Act." I am a victim of Hurricane Ian and COVID-19 and I demand the 3 month $0 payment deferral offered to All victims. The CFPB lists Red flags and Warning signs of credit discrimination such as refusing credit even though you qualify for it based on advertised requirements. Citibank has discriminated against me due to my Hurricane Ian, COVID-19 and other medical disability by refusing to process and grant me the 3 month payment deferral available to all such consumers. The CFPB says that "we work to ensure fair, equitable, and non Discriminatory access to credit for both individuals and communities through… Enforcement and oversight of FederalLending Laws, and Promotion of fair lending compliance…If you believe a Lender has discriminated you fir any reason, you can file a complaint (with the CFPB)." I believe that I am being discriminated against by Citibank's unfair and unequal policy of no action stated herein. The CFPB recommends consumers "report your concerns to the creditor …for reconsideration and consider suing the creditor in federal court individually or to files class action suit". I have followed every possible Avenue but Citibank is just ignorant and willfully refuse to act as required. With millions of affected consumers of Hurricane Ian and COVID-19, judgments with punitive damages and attorney fees could easily reach hundreds of millions of dollars. I have followed CFPB recommendations having spent considerable time and effort to convince Citibank to give me relief already promised. I am CURRENT and NEVER LATE on 100% of my payments with Citibank and all other lenders. Since I am current, and I take advantage of the unconditional and automatic offer of Citibank, Citibank must report to the Credit reporting agencies as current or in good standing even if I stop making payments in the next 3 months believing in good faith they are optional. According to the CFPB, there are 61 million American consumers with Disabilities today who may be subject to credit discrimination. Citibank's

*15*

D-10

discrimination is clearly overt discrimination by its actions and intentional inaction, involving advertisements, media reports and statements and promises to authorities and consumers which proves discrimination in further light of its refusal to address alleged discrimination in writing as asked for and required. Citibank's UNEQUAL treatment against me means consumers similarly situated need not be proved by me (which is the case) but just that I was treated differently and that there isn't any other good reason that would explain the differences in treatment. Citibank's intentional DO NOTHING policies and practices have unequal impact and disproportionately affects me and other members of my class. Since the impact of Citibank's blanket policy of NO Relief for what was promised which negatively affects me and my affected group, that counts as discrimination. Credit Reporting is VOLUNTARY. There are no federal or state laws that require credit card issuers to share data with credit reporting agencies. Similarly, credit reporting agencies can refuse to report data as the whole system is optional. The FCRA does not force any company to report account information to Experian, TransUnion or Equifax. Instead, the FCRA provides the ground rules the credit bureaus and data furnishers must follow. Citibank states: "we are actively supporting our consumer clients through this unprecedented time offering, "Credit card: Fee waivers on late fees and deferral of minimum payments for two months."" I was told over the phone multiple time that Citibank has the same 3 or more month of payment deferral policies of COVID-19 and Hurricane ian but, despite years of processing automatic COVID deferral, no one at Citibank knew how to program the 3 month deferrals and No one wanted to take responsibility or process my dispute. Similar to the Cares Act, Citibank offered 3 months of deferrals and I accepted the offer. If Citibank retaliates against me by frivolously in Bad faith reporting any of my accounts as late, it will never receive another payment from me. Citibank gains nothing from deceptive and illegal discriminatory practices except to alienate consumers. This is a known dispute with Citibank that I have made disputes to at least 10 representatives of Citibank over the phone since the end of September requesting filing my dispute with credit reporting agencies as required under the FCRA yet Citibank has intentionally violated the FCRA for each account by failing to mark my accounts as disputed with inclusion of disputed on my credit reports. In the Sanders case versus BB&T, the jury awarded the consumer $1,000 in statutory damages and punitive damages of $80,000 finding BB&T had intentionally violated its duties under FCRA, 15 USCA 1681s-2(b)(1), by failing to report the dispute on credit reports. The jury decision was affirmed by the US Court if Appeals. Again, despite notice of my clear and known payment deferral dispute with 10+ reps over numerous days caused by COVID and Hurricane Ian, Citibank never reported my dispute with

D-11                                                                                          16

credit reporting agencies as required within the 5 day deadline. Dispute reporting done 2 months later after receiving my complaint will not resolve Citibank of liability for past failures to report my accounts as disputed. Credit reporting agencies and Citibank should and must mitigate damages and costs by just permanently deleting Citibank disputed data and reporting. All Citibank accounts must be permanently deleted. Credit reporting agencies are not stupid birds, like a PARROT, who can just PARROT or repeat exactly what Citibank states without the requisite DE NOVO independent unbiased inquiry. Citibank cannot make the required prima facie showing required by court procedures to justify its purported disputed data and failure to report my accounts as disputed. I cannot cross examine a "verified" entry so consumer reporting agencies are barred from further inclusion of Citibank accounts on my credit file. If Citibank wants me to pay, it can seek Arbitration without having to harass me with frivolous reporting disputed late payments on credit reports. Unfortunately for Citibank only a JURY can resolve the dispute at this point as credit reporting agencies cannot just PARROT known disputed data known to be incomplete, misleading, deceptive, inaccurate etc. While it is clear and obvious that I was entitled to 3 months of payment deferrals due to OFFERS agreed to by Citibank and accepted by me, only a JURY can provide Citibank with relief as a jury would be required to decide the application Of rights and obligations of the parties regarding entitlement to payment deferrals and whether Citibank acted appropriately. While Citibank does not have standing and subject matter jurisdiction to enter a U.S. District Court, any attempts to sidestep a JURY trial or Arbitration would result in my filing a U.S. District Court Action or Bankruptcy Adversary proceeding to determine the amount, validity, priority of party claims seeking punitive damages from Citibank and other violators of the FCRA AFTER extensive and costly DISCOVERY. Because of my failing health in part caused by damages caused by Citibank's no action and threats, I would probably die before court actions and appeals can be completed and my estate would just have to ADD ON additional damages. Citibank's information furnished to consumer reporting agencies must be correct and update the information provided so that it is "complete and accurate". 1681s-2(a)(2). Additional duties a furnisher incurs under 1681s-2(b) are if a consumer disputes the accuracy of information that the furnisher reports. If a consumer notified a CRA that he disputes the accuracy of an item in his file, the FCRA required the CRA to notify the furnisher of the dispute. 1681i(a)(2) and comply with a set of obligations to avoid violations. Thus, FCRA requires furnishers to determine whether the information that they previously reported to a CRA is "incomplete or inaccurate"1681s-2(b)(1)(D). In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information

D-12

17

reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression reasoning that incomplete reporting can violate FCRA when it is "misleading". Citibank affirmatively and unconditional Offered consumers unsolicited 3 months of payment deferrals for affected consumers if hurricane Ian and COVID-19. I accepted expected promised relief which Citibank refuses by its inaction and failure to process my payment deferrals. Consumers need offered relief without jumping through hoops and trying to reach a rep after 30 plus hours of calls. Citibank's reporting is so bad that CRA's are now put in actual notice that any reply by Citibank is unreliable and intended to be willfully inaccurate. Thus CRAs and more importantly, CFPB intervention is required to protect millions of consumers from Citibank's illegal and deceptive intentional practices. Again, in my case Citibank took disputed payments directly from my Social Security checking account over my objections and Citibank refused to refund all 7 payments to me. With multiple credit card lenders, I cannot be reasonable expected to use my valuable time by spending hundreds of hours calling creditors to obtain payment deferrals which must be automatic. The scheme of Citibank is to do nothing in hope that it will not need to provide relief promised. The CFPB has detailed experience regarding serious credit reporting problems and it is in a position to protect the Millions of impacted consumers from Hurricane Ian and COVID-19. The DALTON Court held that a report is inaccurate not only when it is patently incorrect but when it is misleading in such a way snd to such an extent that it can be expected to have a adverse effect. Where a CRA is affirmatively on notice that information received from a creditor may be suspect,it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the automated consumer dispute verification process without additional investigation. Courts have held a reasonable reinvestigation required more than making only a cursory investigation into the reliability of information that is reported to potential creditors. The question of whether a reinvestigation is reasonable is generally one for the JURY. The grave responsibility imposed by the FCRA must consist of something more than PARROTING information received from other sources, PARROTING information from furnishers creates a substantial risk to consumers. Despite the impacts of COVID-19, Hurricane Ian, medical malpractice, refusal of insurance to pay my claims and my medical condition, I have been incredibly stressed by Citibank and others to provide the offered 3 months of unconditional payment deferrals. During all multiple Citibank conversations, I was made to feel anxious, frustrated, ignored, helpless, confused, and offended. Citibank's unauthorized removing 7

*18*

*D-13*

payments from my Social Security checking account, without the return requested, increased my stress level and anxiety. I felt embarrassed, less confident and depressed that Citibank repeatedly said I owed money by its failure to offer the 3 months of payment deferrals offered to all other consumers. I was worried that Citibank would completely drain my Social Security checking account each month in the future further wrongly escalating things to negatively impact my credit in complete disregard for the FCRA. I am still in shock about how I was treated on the phone because I simply have never had such hostile, offensive, and aggressive conversations with another person in a professional setting. Because of Citibank's discrimination and refusal to process the offered 3 months of payment deferrals, I have suffered severe emotional and mental distress. Distress, including mental suffering or emotional anguish, is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong snd it's effect on the plaintiff. CAREY v Piphus, 435 U.S. 247, 263-64. Recovery for that type of injury has been part of our common-law tradition for centuries. Congress's judgment sought to prevent the variety of negative effects that reporting inaccurate credit information

can cause. Even the threat to report disputed information is an inherently abusive, injurious, and coercive shakedown because it forces the debtor with a legitimate ground for disputing a debt to choose between waiving the right to challenge the debt or risk long-lasting negative financial consequences. This type of concrete harm is actionable without the need to show additional harm.

I could continue on and on but I will stop here as I can always supplement matters later. I have obviously spent considerable time and effort in this matter to make my complaint clear and unambiguous. Conflicts between what I state herein and any transcripts or unknown summaries of phone transcripts must be resolved in favor of this complaint. I am sending this complaint by certified US mail return receipt requested to put Citibank, Equifax, Experian, TransUnion and all closed account creditors including Bank of America, PNC Bank, Capital One JPM Chase about my dispute about their data and the consequences of continued FCRA violations. This complaint cannot be accurately summarized into a box as complete forwarding of the entire dispute must be delivered by each CRA to Citibank and all closed accounts. CRAs cannot assume Citibank receives and processes my dispute so they must securely deliver the complete complaint with exhibits to Citibank so that all FCRA requirements are satisfied without exception and without violations. Quite frankly, every CRA has sufficient grounds to DELETE Citibank accounts without waiting for a Citibank response to show good faith in an attempt to mitigate damages and avoid FCRA violations. In any case, Citibank needs to address each and every point in detail as would be

D-14

*19*

expected in a U.S. Supreme Court decision unless it prudently instructs every CEA to delete the file permanently. Hopefully, the CFPB can just intervene promptly causing all closed accounts to be permanently deleted so that Citibank and every CRA does not have to admit or deny wrongdoing.

I could continue and continue but at this point I will stop. Any one point of the numerous points made would justify my requested relief. In combination, all of my points overwhelmingly justify the immediate need for the requested relief.

I respectfully request:

1.    The immediate and permanent deletion of each and every one of my accounts of Citibank from every credit reporting agency, including Experian, Equifax and TransUnion; and

2.    Actual damages from Citibank and any violating CRA—$1,000 statutory damages against Citibank and CRAs for each and every account for each and every FCRA violation for each and every day a FCRA is contained on my credit reports ——plus punitive damages of $80,000+ plus reasonable attorney fees and costs; and

3.    A comprehensive investigation with sanctions or other relief by the Consumer Financial Protection Bureau about Hurricane Ian and COVID-19 policies and handling regarding payment deferrals and other relief evasion or avoidance policies by Citibank and other lenders; and

4.    The immediate and permanent deletion of every closed credit card account from every CRA; and

5.    Deletion of all data from my credit reports by CRAs which is disputed, inaccurate, false, deceptive, misleading, incorrect, unverifiable, improper, incomplete, meaningless, discriminatory, harmful, irrelevant, non-compliant, inconsistent, frivolous, abusive, threatening, unreasonable, unclear, unwarranted, unreliable, unproven, uncertain, Non-investigated to assure maximum accuracy, illegal, prohibited, unconstitutional, unequal treatment, discriminatory, PARROTING, damaging, malicious, negative, insufficient, usurious, negligence, misconduct, coercive, etc.; and

6.    a determination that good faith has been shown that I may be entitled to statutory, punitive and other damages for FCRA willful violations which damages may exceed creditor purported claims making credit reporting unwarranted, irrelevant and inappropriate except to harass me for no justifiable purpose; and

*20*

*D-15*

7.    Immediately and Permanently marking every closed account as DISPUTED BY CONSUMER and prohibiting the reporting of direct or indirect potentially negative or negatively inferred data unless and until a dispute is finally resolved by a U.S. District Court JURY; and

8.    The return of all amounts for the 7 unsigned and unauthorized checks submitted by Citibank on my Social Security checking account since 9/18/22; and

9.    For such other or further relief that may be just, proper and equitable in the light most favorable to me as consumer

NOTE: My primary objective is permanent deletion of all my Citibank and other closed accounts from my credit files of all credit reporting agencies. If the CFPB can help obtain my primary objective, I will be extremely happy and thankful to the CFPB and it may effectively MOOT other relief to be determined, if sought, in the sole appropriate jurisdiction in a jury trial in the US District Court in Orlando.

EXHIBITS

Exhibit # 1

Check unsigned, unauthorized and written by Citibank on my Social Security account for $42 on 9/22/22 and deposited on 9/23/22 for my account 8334 as documented by front and back of check paid by my account. Thus, payment date is 9/22/22, not 9/1/22 (and 9/22) as inaccurately reported by Citibank to Equifax while reporting same payment to Experian and TransUnion with a 9/22/22 date. I have made 10+ disputes to Citibank to report all my 7 accounts as disputed by Citibank has refused to mark any account as DISPUTED and it has falsely verified patently inaccurate data as verified and Equifax has PARROTED Citibank's false frivolous verification. All Citibank data must be permanently DELETED from every CRA and statutory damages of $1,000 awarded to me against Citibank and any CRA for each and every FCRA violation.

Exhibits # 2 and 3

Citibank's 9/26/22 billing statement for Acct 8334 shows receipt of $42 payment on 9/22/22 which corresponds to check paid for $42 documented in Exhibit # 1 thereby proving with certainty that reporting to Equifax with a 9/1/22 payment date is knowingly inaccurate and falsely

*21*

*D-16*

verified without properly reporting CRA data as DISPUTED constituting my obvious willful, deliberate and intentional violations of the FCRA. How can Citibank report a payment as 9/1/22 to Equifax while at the same time report it as 9/22/22 to Experian and TransUnion? Conflicting and inaccurate data banks at Citibank, is the and multiple data banks with conflicting data must be stopped and enjoined!

Exhibits # 4 and 5

Equifax's documents establish that on 11/16/22, I filed a dispute with Equifax disputing all Citibank data (including an erroneous reported 9/1/2022 payment) further alleging that I previously disputed Citibank's data as Citibank offered all Hurricane Ian affected consumers 3 months of automatic unconditional payment deferrals for $0 payments due 10/22, 11/22 and 12/22 which Citibank did not reflect on credit reports despite having offered $0 and I accepted $0 scheduled payments required to be on CRA credit reports. Due to such 11/16/22 dispute, Citibank was required to list my account (and all related accounts) as DISPUTED but it not only violated the FCRA by failing to report accounts as disputed but it falsely certified that account 8334 was accurately reported and Equifax PARROTED such false verification obviously without the required investigation as data was certainly inaccurate.

Exhibits 6 and 7

On 11/18/22, Equifax responded to my 11/16/22 Citibank dispute stating, inter alia: "We have researched the credit account. Account # 8334. The results are: This Creditor has verified to our company that the current status is being reported correctly. This creditor has verified to our company that the prior paying history is being reported correctly…". Exhibit 7 lists 11/18/2022 as the date of the last Reported Update and "09/01/2022" as the Date of the Last Payment which is certainly inaccurate based on Exhibits 1 and 2. Equifax also inaccurately reported a scheduled payment amount of $42 (it must be $0), a date of last payment of 09/2022 (it was 9/22/22), and date of last activity of 09/2022 (again it was 9/22/2022) which demonstrates with certainty that Citibank and Equifax failed to take the simple and straightforward verification procedures of human examination that would certainly discover inaccurate data and discriminatory payment deferrals offered and accepted due to hurricane Ian and COVID. Clearly, the PARROTS or automated BOTS failed to make the required investigation. Citibank and Equifax have been shown that they

D-17                                                                                         22

both intentionally violated the FCRA by purposely reporting inaccurate data and listing account as DISPUTED without the appropriate verification.

Exhibit # 8 and # 9

On 11/16/2022, Equifax correctly listed the Citibank 8334 account as required as DISPuTED as evidenced from the Equifax report from Crefit Karma which states: "Consumer disputes - reinvestigation in progress." Citibank was required to include the required DISPUTE designation on all CRAs, Equifax, Experian and TransUnion since I first made disputes 10+ times but certainly since I filed the 11/16/2022 Equifax dispute. However, Citibank further violated the FCRA by failing to list my accounts as DISPUTED after obtaining the 11/16/2022 Equifax DISPUTE. Equifax committed the worst possible violation of the FCRA by merely failing to investigate and then DELETING the DISPUTE reported. To wit, Exhibit 9 is from what Equifax reported on my file received from me through Credit Karma on November 18, 2022 stating: "Remark code removed from Citicard's CBNA account Between November 18, 2022 and November 19, 2022, the following remark was removed from this account: Consumer disputes - reinvestigation in progress." Despite my accurate meritorious DISPUTE of 11/16/2022, Citibank and Equifax added the DISPUTE on my report on 11/16/2022 then removed the DISPUTE entirely on 11/18/2022 based on what is proven was an erroneous and non existent verification. So despite my bonafide dispute filed in good faith, Citibank failed to investigate and reinvestigate as required which constitutes unconscionable and intentional violations of the FCRA mandating $1,000 damages per violation per violator which should be properly address through DELETION of my Citibank accounts in their entirety. The CFPB cannot tolerate the deliberate FCRA disregard and attempts to violate the spirit of Congressional attempt by deleting any reference to a DISPUTE after a non action after 2 days without correct investigation. My Citibank accounts are correctly disputed and I have submitted incontrovertible proof that Citibank and Equifax are wrong for keeping inaccurate data and deleting DISPUTE on my reports. All this was done behind the scenes without notification about DISPUTE reporting with CRAs. The short 2 day reporting of my Citibank account as disputed without the continued reporting as disputed on every CRA file allows Citibank to merely DELETE required DISPUTE mandatory reporting by just saying all data is correct and accurate and instructing a CRA to delete reference to a dispute. A dispute is a dispute and it must continue to be reported as a dispute in credit reports permanently and not fir 2 days until Citibank can try to get the dispute designation removed. Here, my dispute is meritorious and it must

D-18

23

be reported as DISPUTED especially in light of my uncontroverted right to well publicized and admitted offers of 3 months of payment deferrals due to hurricane Ian and COVID-19. What value do DISPUTES accomplish on reports if Equifax and Citibank can wrongfully on their own remove it without notice, without inquiry and without justification? Only a jury can remove my claimed disputes from my credit file. Exhibits 6, 7, 8 and 9 clearly show that my required DISPUTE with Citibank has been completely deleted from my Equifax report in known and willful violation of the FCRA. The CFPB has a simple well documented case against Citibank and Equifax and I respectfully request immediate and emergency intervention against violators to protect hundreds of millions of consumers similarly situated. Permanent Deletion of my 7 Citibank accounts from my credit files of all CRA files is appropriate in light of willful FCRA violations if furnishers and CRA are permitted to systematically violate the FCRA without fine. Notwithstanding, my Citibank accounts are $0, null void ab initio and uncollectible due to my rights of $1,000 statutory damages with huge punitive damages which exceed $100,000. Since $0 is owed Citibank with my claims significantly exceeding their claims, deletion of all accounts is required as a CRA cannot determine my FCRA violation damages and it has a conflict of interest to determine net Citibank balances which I claim are $0 as offsets exceed Citibank frivolous balances. Permanent Deletion is the sole appropriate option for effective dispute resolution.

Exhibit # 10

On 11/18/22, Citibank purportedly updated my file with Equifax as set forth in my Credit Karma document continuing to inaccurately report my Last payment as Sep 01, 2022 (rather than 9/22/2022 per Exhibits 1 and 2) despite my 11/16/2022 dispute and the non-existent, unverified, inaccurate, and meaningless investigation by Citibank and Equifax. Violators must and will be punished.

Exhibit 11

The same issues for Citibank for account 8334 which are documented on Exhibits 1 thru 10, are identical for the other Citibank 6 accounts. On 10/13/2022, Citibank wrote an unsigned and unauthorized check to Citicards for account # xxx2556 for $58 using my Social Security checking account which check was paid by my bank without my knowledge and authorization on 10/14/2022 as evidenced from the front and back of the check presented to and paid by my bank.

D-19                                                                 24

Exhibit 12 and 13

My unsigned check of 10/13/22 for $58 for Citibank Acct 2556 was included on my

Citibank billing statement dated 10/17/22 as further indisputable proof that I made a

Payment on 10/13/22 for $58.

Exhibit 14

Based on my TransUnion data reported and obtained by Credit Karma on "Nov 15, 2022",

Citibank told TransUnion on 11/15/2022 that my last payment for Acct 2556 was Oct 13, 3022

which would correspond to documents in Exhibits 12, 12 and 13.

Exhibit 15

However, despite knowing that It received a payment on 10/13/2022, Citibank erroneously

and inaccurately reported the last payment for account 2556 as October 1, 2022. Obviously,

Citibank has multiple data bases for every credit reporting agency and consumer data bases.

Citibank knows that it's data is inaccurate and incomplete yet it continues to willfully violate

consumers rights. I seek $1,000 in statutory damages for each and every FCRA against each and

every violator including furnishers and each CRA. Further, a JURY will be certain to award $1,000

per FCRA violation plus huge punitive damages as a JURY can easily understand the impact to

consumers for willfully disregard to FCRA violations.

Exhibit 16

On my Equifax paper report of 10/5/2022, Citibank falsely reported to Equifax on

9/15/2022 that my last payment for account 2556 was paid on 09/01/2022 when it was in fact

09/13/2022. Moreover, every date of last payment has been inaccurate monthly for years.

Exhibit 17

My Experian paper report dated 10/28/2022 falsely discloses that my last payment for $58

for Citibank account 2556 was 09/13/22 which would prove that the Equifax last payment date of

09/01/2022 is inaccurate. While Equifax states that Citibank received my payment on 09.13.22, the

Experian report us inaccurate as does not include my $58 payment dated 10/13/2022 which

payment was written and paid by my bank. All my accounts at Equifax and Experian are similarly

inaccurate mandating DELETION in their entirety.

D-20

Exhibit 18

My TransUnion paper credit report dated 10/05/2022 states that it's last update of 09/15/2022 for Citibank Acct 2556 lists "Last Payment Made: 09/13/2022". Obviously, this conflict demonstrates that conflicting data from Equifax is inaccurate.

Exhibits 19, 20, 21, 22, and 23

Exhibits 1 and 11 document unsigned checks written on my Social Security bank account. Similarly, 5 additional checks are documented in Exhibits 19-23 which clearly demonstrate the actual dates of payments received by Citibank. Citibank wrote and deposit these 7 checks which payments were including in Citibank's 7 billing statements but Citibank reported inaccurate payment dates for each of my 7 Citibank account to Equifax. All facts are in possession of Citibank but I am including documentation so that the CFPB and CRAs can simply conclude that all my accounts must be permanently DELETED.

Exhibit 24

I have a 100% on-time payment history for 10 years as documented on my paper credit reports. I have never missed a payment to any creditor for 10 years so I have never had a late payment of even 1 day late. I received my credit score and score ingredients from a Wells Fargo service which obtained data from Experian reporting a 100% on-time payment while inaccurately stating conflicting data stating I had "1 Late payments 60+ days" which not only is conflict but impossible. My credit score as a result of such 60+ late payment is not only irresponsible but it has reduced my credit score by over 100 points for years. Clearly, my paper credit files have data that is different from files provided to others so that consumers cannot determine the accuracy if concealed data. The CFPB must take immediate action to enforce the Spirit of the FCRA by elimination conflict data bases.

Exhibits 25, 26, 27, and 28

After Equifax falsely verified my Citibank account 8334 DISPUTE of 11/16/22 on 11/28/22 (Exhibits 4-7), I filed another dispute for Citibank account 8334 on 11/20/2022 stating: "I DISPUTED accuracy of ALL data 10+ times with Citi who violated FCRA by never reporting DISPUTE. Citi lied to Equifax on 11/18 verifying false data and Equifax violated FCRA. Data still

D-21

26

inaccurate. List as Disputed and Delete. CFPB will FINE you." Again, without a reasonable reinvestigation and reconsideration of indisputable facts, Equifax again stated, like a PARROT,: "…8334 The results are: This creditor has verified to our company that the current status is being reported correctly. This creditor has verified to our company that the prior paying history is being reported correctly…." Again, data is inaccurate yet remains inaccurate even after the second Equifax dispute. Not only have I demonstrated that data is patently inaccurate but Equifax continues its failure to report the account as DISPUTED, as required, constituting a continued willful violation of the FCRA. I demand that my accounts be reported as DISPUTED and I demand a $1,000 penalty for myself for each and every day a violation remains willfully. CFPB intervention is required and all closed accounts must be permanently deleted as the sole possible enforcement of the FCRA in light of extensive willful violations making the FCRA meaningless.


—Supplemental related recent litigation—

A well publicized Student Loan Forgiveness Program was enacted to void and Forgive balances on lower income student loan borrowers. The Program was invalidated and struct down by a lower court on or about 11/10/2022. President Biden countered by essentially automatically freezing student loan payments to bypass the court. President Joe Biden in a video stated: "But it isn't fair to ask tens of millions of borrowers eligible for relief to resume their student debt payment while the courts consider the lawsuit." Well, similarly, it isn't fair to ask millions of credit card borrowers to jump thru hoops. I and others are entitled to automatic and unconditional payment deferrals due to entitlement caused by the Hurricane Ian FEMA declared disaster and COVID-19. The Bankruptcy automatic stay is an automatic order without further court injunction. President Biden's student loan payment relief is automatic and unconditional. Likewise, my payment deferral for at least 3 months due to Hurricane Ian and COVID-19 is automatic and unconditional without the need to jump through hoops making relief impossible or discriminatory. Violations of the Bankruptcy automatic stay are enforced through Contempt of Court relief against violators. Will Citibank and CRAs force creditors to jump through hoops to obtain student loan deferrals and proper reporting on credit reports? I am entitled to relief as I took a direct hit from Hurricane Ian. President Biden is correct about fairness and it is certainly fair to grant me at least 3 months of deferred payments or until litigation by a jury becomes final, whichever is later. CFPB guidance and action is required to prevent abuses from Citibank and CRAs. Citibank must consider my

D-22

27

Senior Citizen asset protection rights which makes involuntary collection impossible since Social Security benefits, IRA, 401/k and other retirement benefits, veteran benefits, Florida homestead exemptions, etc are all protected from creditor attachment or garnishment. I will never forget how my rights have been abused. I hope the CFPB can intervene to help. I am writing this detail not only for myself but most importantly to help millions of other consumers facing lenders and CRAs. Keep in mind that I have a 100% perfect payment record which is being threatened by illegal conduct of creditors and CRAs.

Sincerely,

Thomas Schultz

Certificate of Service

I hereby certify that a true and correct copy of the foregoing, with exhibits, has been served upon each of the listed parties by certified US Certified Mail Return Receipt of Service.

Thomas Schultz

D-23

28

## PETITION TO COMPEL PRIVATE ARBITRATION
### OF CITIBANK'S BARRED STATE COURT CLAIMS AND CITIBANK'S NON-OPPOSITION TO SCHULTZ'S MOTIONS TO COMPEL ARBITRATION, FILED 6/20/2023 IN STATE COURT

On June 20, 2023, Schultz filed 2 identical "Motions to Compel… Arbitration…" filing various supplemental Arguments thereafter to demonstrate an absolute right to compel arbitration.  **The Motions are FULLY BRIEFED and ready to be ruled on, by this Court, as UNOPPOSED, to effectively dispose of the state court actions in their entirety (cases were never served mandatting dismissal), leaving just Schultz's Complaint.**  Citibank has NOT filed any opposition or any other pleading whatsoever so under state and federal rules, the motion must be granted as unopposed for failing to timely file opposition papers.   Obviously, the motions to compel arbitration are meritorious. Courts have found that it may consider exhibits attached to a complaint but merely attaching exhibits is insufficient to meet the requirements that a complaint must contain sufficient factual matter.   Schultz therefore, to aid the Court, has listed factual matters when appropriate. The 6/20/2023 state court Motions to Compel Arbitration AUTOMATICALLY STAYED the state court cases until the motion is decided and an appeal likewise stays the proceeding.   Case law on the stay was argued in great length by Schultz and Citibank and the state court knew that the case was stayed but violated the stay by failing to do what was right. Schultz filed a CFPB complaint after 6/20/2023 Motions alleging that Citibank, its executions, attorneys and state court clerks and officers did not place the appropriate safeguards, including the cancellation of a scheduled hearing which has been stayed and invalid as service has not been made, mandating dismissal. Contempt of Court by Citibank and others who know better will not be tolerated and such conduct constitutes a deceptive practice under, inter alia, the FDCPA and other statutes.    For such reason, Schultz had no other choice but to file this Court action to prevent irreparable harm by illegally continuing stayed actions. Citibank is a serial violator in everything it does including FCRA, FDCPA, and now the automatic stay of proceedings due to Schultz's Motion to Compel Arbitration.   Citibank was barred from state court litigation after Schultz demanded arbitration and elected to arbitrate requiring Citibank to ministerially

P-1
Petition - 1

29

file a few pages of forms with the AAA and pay fees, big ones.    While the state court might not understand its obligations, Schultz does and this Court will not tolerate continuous wrongdoing by Citibank and therefore punish it with huge punitive damages.    While Schultz filed exhaustive argument supporting the Motion to Compel Arbitration, the below decision of **Airbnb** really decides the Motion to Compel Arbitration as **Citibank empowered an arbitrator, rather than a court or judge, to resolve questions of arbitrability**. **Since there is an arbitration agreement, arbitration must be compelled**.    So Citibank's state court claims must be arbitrated but dismissal with prejudice is required since the case was barred and never served so there is no state court cases to remand after case disposition by this federal Court.    Since Schultz filed CFPB complaints on May 3-5, 2023 with cease and desist notices to stop all communication, Citibank violated the spirit of the FDCPA to harass Schultz by filing barred cases knowing that Schultz's mailbox would be full of advertisements from attorneys looking to defend defendants.    Schultz received at least 30 letters and postcard notices from lawyers looking for business which even included the caption of the case and case numbers to evade the cease and desist intent.    Schultz seeks to punish Citibank for this and all other improper conduct by Citibank, including criminal conduct which will be presented in the Complaint's first cause of action.

**(FILED 7/6/2023 at 7:58 AM in State Court)**
**SUPPLEMENTAL ARGUMENT AND CASELAW FOLLOWING**
**SUPREME COURT OF FLORIDA, AIRBNB, INC. V. JOHN DOE, ETAL.,**
**MARCH 31, 2022 DECISION, "CITIBANK'S "AGREEMENT CLEARLY**
**AND UNMISTAKABLY EVIDENCES THE PARTIES' INTENT TO**
**EMPOWER AN ARBITRATOR, RATHER THAN A COURT, TO**
**RESOLVE QUESTIONS OF ARBITRABILITY" MANDATTING**
**BINDING PRIVATE ARBITRATION**
**IN FURTHER SUPPORT OF**
**PRO SE DEFENDANT THOMAS SCHULTZ'S MOTION TO COMPEL**
**MANDATORY PRIVATE BINDING ARBITRATION WITH THE**
**AMERICAN ARBITRATION ASSOCIATION ("AAA") AND TO STAY**
**THIS CASE PENDING THE PARTIES' COMPLETION OF PRIVATE**
**ARBITRATION, OR, ALTERNATIVELY, DISMISSING THIS CASE AS**
**NULL AND VOID AB INITIO AS SCHULTZ FORMALLY CHOSE**
**ARBITRATION AND ARBITRATION WAS PENDING AND EFFECTIVE**

P-2                                                                      30

**IN MAY 2023 AND THIS CASE WAS ABANDONED AND NEVER SERVED SINCE E-FILING ON JUNE 2, [and June 16] 2023**

Pro Se (non-attorney) Defendant Thomas Schultz ("Schultz") prudently files this Supplemental Argument and Case law (the "Supplement") in further support of the above reference "Motion to Compel...Arbitration..." (the "Motion"). Schultz's Motion goes into extensive detail to address. in advance, every possible point that may be raised to oppose the Arbitration Motion to avoid a rushed reply, if necessary.    There is a presumption that Citibank's extremely experienced lead counsel knows relevant case law and that this Court should also know the relevant case law, including the cases set forth herein. However, Schultz, as a non-attorney, is at a significant disadvantage and must therefore submit much more than the necessary facts, documentation, argument and case law to support every point in the Motion.    Schultz therefore submits an attachment (**SEE EXHIBIT 1**, attached hereto for 18 pages of the Supreme Court of Florida Case No SC20-1167, dated March 31, 2022, *AIRBNB, INC., vs. JOHN DOE, et al.*) of case dispositive relevant case law in addition to the analysis of such case law below in further support of the Motion.    Arbitration is a creature of contract.    If a contract requires arbitration that means the parties are required to arbitrate their disputes as opposed to litigate their disputes and have an arbitrator, not a judge, rule on arbitrability.    Instead of their being a judge or jury, there will be an arbitrator. Schultz has chosen arbitration prior to the filing of this frivolous barred unserved case and Schultz wants to arbitrate the dispute. In this case, since Schultz filed the Motion to Compel Arbitration before even service of the lawsuit, there are two considerations when determining whether a dispute is subject to arbitration: 1) Is there a valid written agreement to arbitrate (such as an arbitration provision in a contract)? YES and 2) Is there an arbitrable issue? YES but **under *Airbnb*, the arbitrator decides on arbitrability, not a court or judge**. There certainly is undeniable grounds to immediately compel arbitration as there is nothing for the Court to decide and there cannot be any waiver as the Motion to Compel Arbitration has been filed at the earliest possible time.    The arbitration provisions prepared by Citibank states:

P-3

"Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered.    Neither you

31

nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA."

Obviously, there can be absolutely no waiver due to Schultz's prompt filing of the Motion to Compel Arbitration and the waiver provisions above in the arbitration agreement. Besides, once Schultz demanded and chose arbitration in May 2023 before the filing of this case, Citibank could have and should have filed the required forms with the AAA and paid the requested AAA filing and other fees.    Litigation in this court was barred.   **Citibank's arbitration provisions effectively provide that Citibank will pay 100% of the arbitration fees and even if Citibank wins it cannot recover its arbitration fees**. To wit, the arbitration provisions state:

> "**Paying for arbitration fees   We will pay your share of the arbitration fees** for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection.   Otherwise, arbitration fees will be allocated according to the applicable AAA Rules [still requiring Citibank to pay virtually 100% of all fees]. **If we prevail, we may not recover our arbitration fees**, unless the arbitrator decides your Claim was frivolous. **All parties are responsible for their own attorney's fees, expert fees and other expenses**…"

**Arbitration is obviously in the best interest for consumers, such as Schultz, but not Citibank as Citibank (1) pays for 100% of arbitration fees [$5,000 to $50,000+], (2) may not recover its arbitration fees [$5,000 to $50,000+] even if it wins, (3) is responsible for its own attorney's fees [$5,000 to $50,000+]. win or lose, (4) may be forced to pay Schultz's attorney fees as provided in the FCRA, and (5) risks alienating the Consumer Financial Protect Board ("CFPB") and other regulators with potential $20,000,000+ damages**.   It should be noted that Citibank cannot prevail in arbitration due to a long list of wilful FCRA violations for which Schultz is entitled to statutory damages, punitive damages and attorney fees of at least

P-4

32

$50,000, far exceeding its disputed claim which is null and void and uncollectible due to illegal conduct of Citibank previously discussed in the Motion to Compel Arbitration, filed June 20, 2023.    Citibank's litigation history is clear that it will unreasonably litigate and incur huge expenses for no purpose other than harassment.    In the *Dempsy v Citibank, N.A.* case discussed and documented at **EXHIBITS E and F** in the 6/202023 Motion to Compel Arbitration, rather than pay a valid checking account dispute of $289, Citibank forced arbitration of a Arizona lawsuit for which the Arbitrator awarded $50,000+ against Citibank due to violations of the FCRA requiring Citibank to pay arbitration fees and its own attorney fees, possibly costing Citibank $150,000 plus bad publicity. Shareholders of Citibank should not have to waste $150,000 over a $289 dispute and bank error.    Schultz envisions Citibank filing state court appeals in the Circuit court, District Court of Appeals and higher courts to unreasonably multiply proceedings to harass and bankrupt Schultz for no purpose.    For such reason, Schultz is taking this matter seriously to anticipate and argue against any crazy and frivolous objections of Citibank to arbitration that may be argued. This case belongs in arbitration, not a state court. Under *Airbnb*, the arbitrator decides arbitrability, not this court.    In arbitration, Schultz pays $0 in fees without the possibility of liability for Citibank attorneys fees and arbitration fees which could exceed $50,000 easily. In this Orlando county court case, Schultz would even have to pay at least $300 in filing fees to the Clerk of the court to merely file a counterclaim. Thus, to properly defend this action via a counterclaim, $300 filing fees will need to be wasted.    Schultz is the victim of extensive wilful FCRA violations and Schultz should not have to waste $300 in court filing fees when the arbitration provisions barred this lawsuit as the parties chose arbitration for all disputes.    Similarly, appellate filing fees should not have to be wasted when this matter requires arbitration.    The state court rules could potentially award Citibank attorneys fees of $50,000 against Schultz while $0 can be awarded against Schultz in arbitration.    $0 versus $50,000+ is a deal which Schultz did not bargain for in the arbitration provisions.    $0 versus even a $300 county court counterclaim filing fee is outrageous when Schultz pays $0 having elected to arbitrate.    Entitlement to arbitration, and the granting or denying a party's motion to compel arbitration, is a non-final order that is appealable. Fla R.

P-5

33

App. P. 9130(a)(3)(C)(iv).   Typically, when a party moves to compel arbitration and that motion is granted or denied, there is an appeal of this non-final order.. So Schultz is certainly expecting an appeal and extensive expenses on both sides rather than consent to arbitrate.   Citibank could of and was required to file its claims in arbitration rather than filing this barred lawsuit.   So any costs and waste of resources is due to the frivolous litigation fiasco of litigation versus Arbitration, the forum demanded and selected by agreement. An order granting or denying a motion to compel arbitration is reviewed on appeal with a de novo standard of review. *Chaikin v. Parker Waichman LLP*, 42 Fla. L. Weekly D2165b (Fla. 2d DCA 2017) *quoting Roth v. Cohen*, 941 So.2d 496, 499 (Fla. 3d DCA 2006). <u>The purpose of Rule 9.130(a)(3)(C)(iv) is to ensure that the parties in business litigation do not waste their time trying their case in a forum which ultimately is found to be improper after an appeal of a final judgment</u>.   *See State, Dept. Of Health & Rehab. Services v. Elec. Data Sys. Corp.*, 664 So. 2d 332 (Fla. 1st DCA 1995)* ("[T]he purpose of rule 9.130(a)(3)(C)(v) is to afford appellate review before a party enters into arbitration").   The alternative is an appeal after final judgment. *Episcopal Diocese of Cent. Florida v. Prudential Sec., Inc.*, 925 So. 2d 1112 (Fla. 5th DC 2006)(" A non-final order compelling arbitration may be appealed. [...] Notwithstanding, having failed to take a non-final appeal, the appellant is permitted to pursue a final appeal after arbitration is completed").   <u>This rule provides a method of obtaining an early decision on the proper forum for resolving a dispute, [...] and thereby avoids the possibility that a party might be forced to litigate the entire controversy in the wrong forum before the error can be corrected</u>." *Powertel, Inc. V. Bexley*, 743 So. 570 (Fla. 1st DCA 1999).   Once Schultz demanded and chose arbitration, Citibank was required to simply ministerially file a Claim with AAA and pay its fees, rather than file 2 separate improper and barred cases before Judges Johnson and Sandor.   After Schultz filed a demand for arbitration in May 2023 for every account, Citibank was required to file a lawsuit in federal court [not the limited jurisdiction of the county court] seeking to avoid arbitration and further seeking declaratory and injunctive relief to stay and/or enjoin the arbitration. Citibank wasted $310 filing each of the 2 related cases in the wrong forum despite knowing that the limited jurisdiction of the court was improper.

P-6

34

Citibank's typical style is to file hundreds of thousands of cases yearly expecting no opposition from defendants to obtain default judgments.   In this case and . every Citibank case examined, Citibank has wilfully concealed the required Card Agreement Guide with arbitration provisions and the incorporated AAA Rules examined in *Airbnb* from the court and litigants to thwart a proper defense. Schultz has spent almost a year trying to get concealed Card Agreement Guides and only finally obtained them in May 2023 after filing CFPB complaints and Debt Validation demands with several attorneys of Citibank.   Moreover, to properly prove the existence of valid arbitration agreements, Schultz further attached Citibank's Card Agreement Guide submitted to the CFPB and included in its database for Citibank.   (**SEE EXHIBIT A, B, C and D**, attached to the Motion to Compel Arbitration).   By concealing the existence of the Card Agreement Guides with arbitration provisions from the court, Schultz and this court have needed to waste resources when Citibank should have attached the Card Agreement Guide and AAA Rules to its Complaint.   Failure to attach the Card Agreement and incorporated AAA Rules, standing alone, is grounds to compel arbitration and dismiss the case.   While Schultz's first thought was to file a Request for Admission so that Citibank could admit that the EXHIBITS A, B, and C were true and correct copies of the agreements, the failure to object to the authenticity of said documents by opposition would decide the matters in favor of Schultz as unopposed allegations must be taken as true.   No opposition whatsoever has been received regarding the Motion to Compel Arbitration in either case so there is a presumption that it must be granted as unopposed.   But Citibank knows all the tricks. So, will Citibank appeal?   Probably.   Citibank's complaint is fatally defective as it conceals disputes and fails to acknowledge the existence of bona fide FCRA willful violations with statutory damages exceeding the stated and disputed claims of Citibank. Should this Court, on its own motion, compel arbitration of every Citibank case for the last 3 years?   YES. Has Citibank acted in Bad Faith by filing the county court actions against Schultz? YES.   Why did Citibank force arbitration when *Dempsey* sought $289 in the Arizona case?   Why won't Citibank arbitrate these cases with Schultz?   Why is Citibank so inconsistent and unpredictable?   Schultz demands that the disputes with Citibank be resolved in Arbitration by AAA pursuant to the arbitration

P-7

35

agreement so that Schultz will pay $0 in fees with no adverse possible responsibility for arbitration and attorney fees.    Attorney fees of Citibank with numerous court filing fees for appeals etc are expected to exceed $50,000 which Schultz wants to avoid by way of arbitration. So it is $0 versus $50,000. Generally, the court's discovery rules are more permissive than in arbitration. "[A] party's ability to take depositions and to propound discovery requests is generally much more limited in arbitration than it is under the Florida or federal civil rules." *Green Tree Servicing, LLC v. McLeod,* 15 So. 3d 682 (Fla. 2d DCA 2009); *Florida Holdings III, LLC v. Duerst ex rel. Duerst*, 198 So.3d 834 (Fla. 2d DCA 2016)( "our court has recognized that discovery 'is generally much more limited in arbitration' and that arbitrators have broad discretion as to grant or deny the ability to obtain discovery").    Schultz wants to arbitrate to avoid the expense and delay of never ending discovery such as Admissions, Depositions, Interrogatories, Production of Documents, subpoenas of credit reporting agencies, etc.    Such discovery, plus a week long jury trial, with expert witnesses, would significantly increase the costs to both parties for court litigation. Schultz demands arbitration and elects to arbitrate to pay $0 in arbitration versus $50,000 in court litigation. Citibank's own arbitration provisions state:

> "**The arbitration procedures are simpler and more limited than in court**.    This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow... **The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules**, which may limit discovery.    **The arbitrator shall not apply any federal or state rules of civil procedure for discovery**, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect Account information and other confidential information of either party if requested to do so.    The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law."

Schultz wants to arbitrate using the agreed SIMPLER procedures limiting discovery to keep the costs of the parties as reduced as possible without wasting resources to harass litigants.    Schultz is entitled to arbitrate the dispute. The arbitration provisions further state that

P-8

36

"all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or **injunctive or declaratory relief**) they seek…"

The county court selected by Citibank may not have jurisdiction to resolve the disputes of the parties especially for injunctive and declaratory relief to enforce the FCRA and FDCPA under the Small Claims Rules, mandating arbitration. This court would be right to infer that Schultz's argument here could be considered a step towards **severence** of the "small claims court" carve out due to **unconscionability as completely one-sided in favor of Citibank**. However, a request to sever just the small claims court carve out from the otherwise valid other terms will be forthcoming within a few days.   *See Dalton v. Santander Consumer USA, Inc.*, Court of Appeals of New Mexico, March 23, 2015 for comprehensive relevant argument involving small claims court carve outs and other one-sided unconscionable terms.

The Supreme Court of Florida in *Airbnb* (**See EXHIBIT 1**, attached hereto) decided the following relevant identical issues to this case:

> "**The issue before this Court involves who decides arbitrability** ---"where a dispute to a contract's arbitration provision"---**an arbitrator or a judge**…**Specifically, we address whether Airbnb's Terms of Service that incorporated by reference the American Arbitration Association (AAA) Rules that expressly delegate arbitrability determinations to an arbitrator constitute "clear and unmistakable" evidence of the parties' intent to empower an arbitrator, rather than a court, to resolve questions of arbitration.   As explained below, we hold that under the Federal Arbitration Act (FAA), it does and quash the Second Districts decision in *Natt*. …Rule 7 of the AAA Rules provided: "The arbitrator shall have the power to rule on his own or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim*." (Emphasis added.)… This federal precedent has explained that when an agreement incorporates a set of arbitral rules, such as the AAA Rules, those rules become part of the agreement.   And where those rules specifically empower the arbitrator to resolve questions of arbitrability, incorporation of the rules is**

P-9                                                                    37

**sufficient to clearly and unmistakably evidence the parties'
intent to empower an arbitrator to resolve questions of
arbitrability.    And as the Supreme Court has emphasized,
"[w]hen the parties' contract delegates the arbitrability
question to an arbitrator, the courts must respect the parties
decision as embodied in the contract.** *Henry Schein*, **139 S. Ct.
At 528. … CONCLUSION We hold that, because Airbnb's
Terms of Service incorporate by reference the AAA Rules that
expressly delegate arbitrability determinations to an
arbitrator, the agreement clearly and unmistakably evidences
the parties' intent to empower an arbitrator, rather than a
court, to resolve questions of arbitrability."**

Citibank's Arbitration provisions (**SEE EXHIBITS A, B and C**, attached to
the "Motion to Compel Arbitration…", filed 6/20/2023) states:
"How arbitration works - Arbitration shall be conducted by the American
Arbitration Association ("AAA") according to this arbitration provision and
the applicable AAA arbitration rules in effect when the claim is filed ("AAA
Rules"), except where those rules conflict with this arbitration provision…"
Citibank's case is identical to *Airbnb* in all regards so the arbitrator, not a
court, decides arbitrability.    This court must respect the Supreme Court of
Florida's extensive decision in *Airbnb* by granting Schultz's motion to
compel arbitration in its entirety so that Citibank must be required to
Arbitrate its claims required by filing its claims with AAA and paying 100%
of its AAA's fees as they become due.

Schultz wants to arbitrate and Citibank should mitigate damages and prevent

proceedings from unreasonably multiplying by agreeing to arbitrate any and all of

Citibank's claims including those yet to be filed.    Since this Court can wait and

see what other filings and proceedings are filed by the parties about disputes not

yet filed, this court should take its time for up to a year before ruling on Schultz's

Motion to Compel Arbitration so that the appropriate decision can be entered

after the full set of disputes can be considered.    Schultz has promptly filed

papers without any delaying tactic so the final decision on the Motion should not

be rushed.    Schultz has examined numerous case files in the county court and

generally Citibank waited 2 years before filing a complaint against credit card

holders.    However, for Schultz, Citibank filed lawsuits without notice promptly

*38*

*P-10*

for retaliation for multiple CFPB complaints for FCRA, FDCPA and other violations and debt validation issues never responded by Citibank's counsel. . There are important statute of limitation considerations which the parties need to consider which may require prompt filing a federal action in Orlando against Citibank and the 3 major credit reporting agencies.    Citibank would probably successfully move in federal court to compel private arbitration, after being enjoined against further FCRA and FDCPA violations after deleting all accounts permanently from every credit report, which would leave the 3 credit reporting agencies alone to defend FCRA willful violations for statutory damages of $1,000 each plus punitive damages.    Schultz's claims against Citibank involve sensitive private confidential data of the parties involving credit reporting procedures under Metro 2.    Protection of such massive and necessary data is best handled by an Arbitrator or a federal court as the county court may have already shown issues in protecting data by reporting account number of Schultz to the public in violation of law for which striking the Complaint is mandatory.

WHEREFORE, Pro Se (non-attorney) Defendant Thomas Schultz respectfully requests that this Court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. 1, et seq., enter its Order (1) staying this matter and compelling forced binding mandatory private binding arbitration with the American Arbitration Association ("AAA"), or, alternatively, dismissing the action as Null and Void ab initio as the matter was effectively in Arbitration during May 2023 prior to the E-filing of this case in June 2023 and this case was abandoned and never served upon Schultz, (2) along with such other additional further relief that may be just, proper and equitable including a detailed written statement of decision considering and addressing each and every point and argument raised in this case..

**(FILED 6/20/2023 8:08 AM in State Court)**
**PRO SE DEFENDANT THOMAS SCHULTZ'S MOTION TO COMPEL**
**MANDATORY PRIVATE BINDING ARBITRATION WITH THE**
**AMERICAN ARBITRATION ASSOCIATION ("AAA") AND TO STAY**
**THIS CASE PENDING THE PARTIES' COMPLETION OF PRIVATE**
**ARBITRATION, OR, ALTERNATIVELY, DISMISSING THIS CASE AS**
**NULL AND VOID AB INITIO AS SCHULTZ FORMALLY CHOSE**

*P-11*

*39*

**ARBITRATION AND ARBITRATION WAS PENDING AND EFFECTIVE IN MAY 2023 AND THIS CASE WAS ABANDONED AND NEVER SERVED SINCE E-FILING ON JUNE 2, 2023**

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. 1, et seq., Pro Se (non-attorney) Defendant Thomas Schultz ("Schultz") respectfully moves this Court for an order staying this matter and compelling private binding arbitration with the American Arbitration Association ("AAA") or alternatively dismissing the action as Null and Void ab initio as the matter was effectively in Arbitration during May 2023 prior to the filing of this case in June 2023.    Citibank has a forced binding private arbitration agreement involving this dispute.    During about April 2023, Schultz filed multiple requests to obtain Citibank's credit card agreements involving arbitration clauses, for any and all of Schultz's Citibank 9 credit cards all voluntarily closed by Schultz over 2 years ago from June 17, 2021 to July 12, 2021 due to what Schultz considered fraudulent and deceptive interest rate bait and switch and other illegal conduct. Under duress, Schultz paid off 2 Citibank accounts shortly thereafter in mid 2021, leaving 7 accounts which Schultz disputed for illegal interest rate increases and charges after the mid 2021 account closings.    Schultz continued to timely pay every creditor credit card, including 7 Citibank credit cards. Schultz had a perfect payment record with every creditor including Citibank until Hurricane Ian hit Orlando in September 2022. Schultz asked Citibank and all creditors for publicly promised relief and once again promised relief was improperly denied after virtually hundreds of hours of phone calls. Schultz discovered that creditors, including Citibank, retaliated by wilfully or negligently filing false data on credit reports including that Schultz was 60 days late, before Hurricane Ian hit, when no payment was ever late. Such inaccurate undisclosed 60 day late payment, likely reported maliciously by Citibank, resulted in a 100+ lower score than what it would otherwise be.    Schultz obtained credit reports from every credit reporting agency ("CRA") and discovered that paper credit reports only included a portion of credit data reported by creditors, including Citibank, and included in CRA files in complete violation of the Fair Credit Reporting Act, 15 U.S.C 1681 et

P-12                                                                              40

seq ("FCRA"). Thus, paper credit reports lacking complete and accurate data in CRA files would prohibit consumers from disputing concealed inaccurate and incomplete data visible by others.    Moreover, despite Schultz's objections on various phone calls, Citibank fraudulently continued to illegally take 7 unauthorized monthly payments after Hurricane Ian from Schultz's Social Security checking account refusing to return them even after filing multiple complaints with the Consumer Financial Protection Board ("CFPB"). A comparison of every CRA paper and online credit report demonstrated widespread differences of data including inconsistent, missing, facially false, and incomplete and inaccurate data for which direct and indirect disputes were filed with creditors, like Citibank, and every CRA, including the CFPB, mandating investigation which was not properly done to correct data or delete accounts as requested numerous times. Every CRA jointly created Metro 2 which requires monthly and immediate midcycle data reporting by Citibank and creditors to comply with the FCRA and other statutes.    Unfortunately, the 360+ page Metro 2 guide is too complex for even experts resulting in extensive wilful FCRA violations each of which provides statutory damages of $100-$1000 per violation, plus costs and attorney fees,    At $1,000 per wilful, retaliatory, deliberate, intentional and malicious violation of the FCRA mandatory requirements, per each of the 7 Citibank accounts, it becomes obvious that Schultz owes Citibank $0 for every account, not the entirely disputed $27,896 claims reported by Citibank for its 7 entirely disputed accounts on Schultz credit reports of Trans Union and Equifax as of May 31, 2023. Such Trans Union and Equifax reports both contain amounts of    $6,216, $5,086, $5,050, $4,638, $2,771, $2,016, $2,119, $0 and $0 for the 9 Citibank accounts including voluntary consumer account closing dates reported by Trans Union as 7/12/2021, 7/7/21, 7/7/21, 6/18/21, 6/18/2021, 6/18/2021, 6/28/2021, 6/17/2021 and 6/17/2021 (Equifax violates the FCRA by failing to report closing dates) and account opening dates of 6/11/2013, 4/3/2012, 10/26/2010, 8/31/2014, 9/19/2011, 8/15/2011, 12/12/2013, 5/28/2018 and 5/11/2015 reported by Trans Union and Equifax respectively. Citibank reported such disputed data totaling $27,896 as of

P-13                                                                      41

5/21/2023 on credit reports. Citibank lost a great customer with a 13 year perfect payment record 2 years ago by being stubborn to do the right thing for which Schultz elected to close every account voluntarily, even with a large amount of available credit, rather than deal with the deceptive practices of Citibank.    Citibank should have mitigated damages by permanently deleting all of Schultz's 9 accounts from every CRA.    Credit reporting is optional for Citibank credit card customers.    By deciding to report customer data to a CRA, Citibank was obligated to comply with a complex system of data reporting which it failed miserably in every aspect.    FCRA and FDCPA statutory damages for willful and negligent violations provide for access to federal courts.    The CFPB receives millions of consumer complaints for credit reporting and everyone knows the problems can never be fixed granting consumers the obligation to use federal courts to redress violations.    A precondition for creditors like Citibank to get paid is to comply with every obligation under the FCRA and other statutes. Failure to comply with statutes grants consumers statutory rights to damages including punitive damages and attorney fees which can result in $100,000 or more in punitive damages for recalculate repeat offenders.    Citibank is incapable of complying with the FCRA and other statutes and it must permanently delete Schultz's accounts from every CRA to further mitigate damages. While the USDC would certainly enjoin Citibank from further FCRA and other violations, this court and even private Arbitration may not have injunctive powers to prevent irreparable harm and damage. It is uncertain where this $27,896 disputed claim of Citibank, plus my $100,000 claims, may end up as Citibank could always file a motion to compel arbitration if I file counterclaims or new USDC cases.    How many cases does Citibank plan to start and in what forum?    Should I file multiple USDC lawsuits also naming every CRA so Citibank could force arbitration while the USDC continues against every CRA?    While Schultz would love a small claims court jury trial so that similarly situated jury members could punish Citibank, arbitration is mandatory.    Schultz could have and still can file a federal-question jurisdiction lawsuit against Citibank and every CRA in the United States District Court Middle District of Florida in Orlando

P-14

42

("USDC") under 28 U.S.C. 1331 for FCRA statutory damages of $1,000 per violation plus costs, attorney fees and punitive damages, easily exceeding $80,000, as 15 U.S.C. 1681p states: "An action to enforce any liability created under this subchapter may be brought in an appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction." This would also grant the USDC original subject matter jurisdiction under 28 U.S.C. 1332 for diversity of citizenship jurisdiction and amount over $75,000. Not only has Citibank repeatedly wilfully violated the FCRA but it continues to violate the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. 1692 et seq. which provides debtors with a means for challenging payoff demands, and for determining the validity and accuracy of asserted debts. 15 U.S.C 1692g.    The FDCPA, like the FCRA, provides for private rights of action against debt collectors, and permits debtors to recover actual damages, statutory damages, attorneys' fees and costs for violation of its terms. 15 U.S.C. 1692k.    FDCPA Jurisdiction under 15 U.S.C 1692k similarly states: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy..." . The dispute with Citibank must be resolved in the USDC or binding arbitration with AAA paid 100% by Citibank not a small claims state court in Orlando.    While Schultz could have long ago filed a USDC case against Citibank, Citibank was given repeated opportunities to correct wilful violations instead of filing multiple USDC lawsuits.    More importantly the $100,000+ punitive damages awards for FCRA misconduct are granted when repeated wilful violation continue and continue.    Another consideration for not yet filing a USDC lawsuit involved the uncertainty over what Arbitration agreements were in effect.    Citibank could easily move to successfully compel forced binding arbitration if a USDC lawsuit is filed.    Citibank has long refused to provide its credit card agreements including contractual enforceable rights and obligations to Arbitrate.    However, it is now absolutely clear that Citibank has an arbitration provision which requires arbitration of any disputes including this frivolous disputed claim. To wit, on May 22, 2023, Citibank's attorney, Jennifer K.

P-15

43

Klein, Esq. of the lawfirm of RAS LaVray, sent Schultz 3 separate packages for his
accounts each of which contained the requested Card Agreement Guide          .
including the effective and admitted Arbitration provisions at paragraph 11 of
the Guide starting at the bottom of page 8. (SEE EXHIBIT A, attached hereto).
On May 19, 2023, Citibank's attorneys, Terry A. Brooks, Esq. and Mairim A.
Morales, Esq .of the lawfirm of Marcadis Carey, P.A., sent Schultz multiple
packages for 2 other different accounts each of which contained the same
identical Card Agreement Guide and the identical Arbitration provisions at
paragraph 11 of the guide starting at the bottom of page 8.    (SEE EXHIBIT B,
attached hereto).    Citibank is required by the Consumer Financial Protection
Board ("CFPB") to list its Credit Card Agreements in the CFPB database which
include applicable Arbitration provisions to be reviewed by the public,
cardholders and consumers.    The CFPB database included the same Credit Card
Guide and Arbitration provisions as admitted above by Citibank's 2 separate law
firms so it is obvious clear that Schultz's accounts are all covered by the same
arbitration agreements documented herein.    (SEE EXHIBIT C, attached hereto
for the same arbitration agreement published in the CFPB database for Citibank).
Not trusting Citibank, on 6/11/2023 Schultz searched the AAA website to obtain
Citibank's arbitration agreement to further ascertain how Citibank discloses its
arbitration agreement. (SEE EXHIBIT D, for search results and ARBITRATION
agreement for "Citibank, N.A. 10/7/2014").    The AAA disclosure for the Citibank
arbitration agreement is formatted completely different in the form of questions.
While the true arbitration agreement admitted in EXHIBITS A, B and C requires
arbitration exclusively in AAA and does not allow JAMS, the AAA search contains
the following similar or identical relevant provisions:    ARBITRATION (SEE
EXHIBIT D)    "ARBITRATION ... IT PROVIDES THAT ANY DISPUTE MAY BE
RESOLVED BY BINDING ARBITRATION.    **Agreement to Arbitrate**: Either you or
we may, without the other's consent, elect mandatory, binding arbitration for
any claim, dispute or controversy between you and us (called "claims").    **Claims
Covered    What Claims are subject to arbitration?**    All claims relating to your
account, a prior related account, or our relationship are subject to arbitration,

P-16

44

including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.    All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) thy seek.    This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party….**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.    This arbitration provision is governed by the Federal Arbitration Act (the "FAA").    **What about debt collections?**    We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee… You may seek arbitration on an individual basis of any Claim asserted against you, including a proceeding to collect a debt."    Schultz has the right to arbitrate.

**ENFORCEABLE ARBITRATION AGREEMENT** (EXHIBITS A, B and C)

"ARBITRATION…**This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action…This arbitration provision is governed by the Federal Arbitration Act (FAA) and shall be interpreted in the broadest way the law will allow. <u>You or we may arbitrate</u> any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "claims"). <u>If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.</u> All claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek…** {**NOTE**: SCHULTZ filed at least 8 complex and comprehensive CFPB Debt Validation complaints against

P-17

45

Citibank and its debt collectors during April and May before May 31, 2023 specifically repeatedly choosing, demanding and electing arbitration so Citibank does NOT "have the right to litigate that Claim in court" including this or any other lawsuit. Citibank was required to file papers with AAA and pay 100% of AAA's fee as only Citibank could file its own papers and pay its fees. In other words, this case was pending in Arbitration with AAA absent the mere ministerial filing of papers and paying 100% of the AAA filing fees. Quite simply, since this case is and has been pending in Arbitration, this case filing is null and void ab initio as the matter cannot be both in Arbitration and a court at the same time. Dismissal of this case is required to avoid an unnecessary multiplication of proceedings. This case is a deliberate and malicious prosecution and retaliation for my CFPB complaints. **ALSO NOTE:** Citibank claims that SCHULTZ owes a disputed debt of $27,896 on 7 related and consolidated credit card accounts closed over 2 years ago but Citibank seeks to unreasonably multiply proceedings by filing smaller amount single account separate lawsuits in multiple court cases to get multiple bites at the apple instead of arbitration. Arbitration cannot be EVADED and avoided by frivolously filing small separate partial claim small claims court lawsuits.} **We won't initiate arbitration to collect a debt from you unless you choose to arbitrate**  {Schultz REPEATEDLY CHOSE AND ELECTD ARBITRATION IN WRITING MULTIPLE TIMES IN 8 CFPB COMPLAINTS} **or assert a Claim against us.    If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you.** {This implies that a counterclaim in this case could allow Citibank to Compel Arbitration.    Schultz has offsetting claims for multiple willful Fair Credit Reporting Act ("FCRA") violations and Fair Debt Collection Practices Act ("FDCPA") wilful violations imposing statutory damages of up to $1,000 per violation plus punitive damages which could exceed $100,000, exceeding this Courts limits, and allowing Citibank to remove the case to the US District Court in Orlando}. **You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.** {Schultz THUS ELECTED TO CHOOSE AND CHOOSES TO ARBITRATE Citibank's Claim in this case but in reality there is no

P-18

46

court case as it has been already commenced and pending in Arbitration.    This is just another frequent example of Plaintiffs failing to proceed with Arbitration and paying the filing fee after being compelled to do so.    Citibank controlled its destiny but now seeks to litigate in multiple forums to frivolously retaliate, threaten, harass and intimidate a PRO SE individual in violation of the FDCPA where Arbitration has been the FORUM contracted by the parties.} **Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision…To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.** {Schultz files this Motion to Compel Arbitration and for a stay or dismissal as his first pleading and he awaits an opportunity to file reply papers, if needed, for disposition of this motion before filing an answer, counterclaim or other case dispositive motions.} **We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less…If we prevail, we may not recover our arbitration fees…This arbitration provision may not be amended, severed or waived…"**    {Obviously, Citibank does not want to pay ALL arbitration fees of AAA and has improperly filed this action in the court with the cheapest filing fees in hope of getting a chance to negotiate a settlement or favorable decision to apply with other planned cases against Schultz.    Since commencement of an Arbitration case requires the "submitting the required AAA forms and requisite filing fees to the AAA" only Citibank can file its forms and pay ALL filing fees such that Schultz's CFPB Complaints applicable for every Citibank account and Citibank's responses with its Arbitration agreements, before the filing of this lawsuit, constitutes a FORMAL ELECTION and CHOICE TO ARBITRATE absent mere ministerial action controllable solely by Citibank. Once Schultz ELECTED and CHOSE arbitration, Citibank's sole remedy was Arbitration barring any court action of any kind in any court including this court.    To block any chance of a successful appeal by Citibank of an adverse order, this Court should rule that the case is already in Arbitration and thus Null and Void mandating dismissal with a further finding that to the extent the case is not dismissed, the motion to

P-19

47

compel arbitration must be granted.}    The clear and conspicuous agreement to arbitrate present in Citibank's credit card agreement requires this Court, pursuant to FAA 9 U.S.C. 1, et seq., to stay this matter and require Citibank to arbitrate any and all claims arising from or relating to its credit card agreement in conformity with the plain terms of the arbitration agreement which Citibank prepared for all its customers and freely agreed to. Conflicts in the agreement, if any, must be resolved against Citibank as the agreement preparation party. This case and dispute certainly belongs in arbitration, the forum selected by the parties ex ante to decide all disputes, including arbitrability. No one can seriously dispute the presence of the arbitration agreement documented herein and prepared by Citibank requiring it to arbitrate all claims arising out of its credit card agreement.    And, at an irreducible minimum, the arbitration agreement's clear and conspicuous provisions require this or any court to compel arbitration at least as to all matters of arbitrability. The ability to vindicate small-dollar claims has already been presented to, and firmly rejected by, the United States Supreme Court on multiple occasions as a basis to avoid arbitration. *See AT&T Mobility v. Concepcion*, 563, U.S. 333, 351 (2011); *Italian Colors*, 570 U.S. at 238; *Epic Sys.*, 138 S.Ct. At 1622-23. As the U.S Supreme Court has repeatedly reaffirmed, "not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen procedures." Epic Sys Corp. v. Lewis, 138 S.Ct. 1621, 1621 (2018).    As such, this Court must, at a minimum, pursuant to the FAA, order this case stayed and sent to binding arbitration with AAA for which Citibank is contractually required to pay 100% of the AAA filing fee. If Citibank wants to abuse the *court process* by filing 7 different lawsuits in different forums, it must be prepared to pay for 7 separate Arbitration case filings with AAA and face the wrath of courts and arbitrators.    In *Chad Handy v. Countertops To Go*, the 5th DCA of Florida stated: "Defendant moved for summary judgment under Florida Small Claims Rule 7.110(b) and 7.135 arguing that all counts should be dismissed because the dispute must be settled by arbitration and the small claims court dismissed the action compelling arbitration...[The lower court was

P-20

48

reversed] Pursuant to section 682.03 Florida Statutes (2020), the imposition of a stay, not an order of dismissal, is the appropriate disposition when a matter is sent to arbitration.    Our court has previously recognized, under facts similar to the instant case, that the appropriate disposition is a stay of the proceedings and not dismissal of the case. *See Timber Pines Plaza, LLC v. Zabrzyski*, 211 So. 3d 1147, (Fla. 5th DCA 2017 (reversing the trial court's order denying a motion to compel arbitration and remanding with instructions to send the matter to arbitration and to stay the litigation, citing to section 682.03(7); *Fouche v. Pilot Catastrophe Servs, Inc.*, 217 So. 3d 225, 226 (Fla. 5th DCA 2017)(reversing the trial court's order which dismissed the case after finding the claim should be settled in arbitration and remanding with instructions to vacate the dismissal language and to impose a star of the lawsuit pending arbitration."    Section 682.03(6), Florida Statutes, specifically provides that once a motion to compel arbitration has been filed, the court must stay "any judicial proceeding that involves a claim alleged to be subject to arbitration until the court render a final decision [on arbitrability of the dispute]." Following federal and Florida state case law regarding similar small claims cases sent to arbitration by appellate courts with instructions to stay the case until completion of arbitration, Schultz is entitled to have this case sent to binding private arbitration with a stay until arbitration is finalized. However, since the case has never been served and arbitration has been effectively commenced by choice, election and notice prior to the case filing, Dismissal of the frivolous Null and void case with prejudice is the proper disposition as Citibank was barred from litigation after Schultz elected arbitration in multiple CFPB complaints. At a minimum, this court should enter an order compelling arbitration and staying the case to the extent that a case exists.    Courts will typically not permit this sort of gamemanship by plaintiffs when the matter is brought to their attention.    "An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules." Suarez-Valez v. Shearson/American Express, Inc., 845 F.2d 950 (11th Cir. 1988).    Citibank agreed to arbitrate and Schultz demands arbitration. Nonetheless, the USDC has authority to order Citibank to comply with its

P-21

49

contract.    Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. 4. If Citibank refuses to arbitrate and even appeals an order compelling arbitration to harass Schultz, obviously Schultz can simply petition the USDC which will certainly compel arbitration.    Furthermore, if Schultz files a USDC action due to the aforesaid willful violations of the FCRA and other statutes, Citibank will certainly move the USDC to compel arbitration.    Citibank should start trying to mitigate damages by simply dismissing this frivolous action, which has not been served, and proceeding in forced binding private arbitration.    Actions should generally be stayed, not dismissed, pending arbitration.   *See Bender v. A.G. Edwards & Son, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992).    The FAA, 9 U.S.C. 1, et seq., and case law interpreting the FAA, particularly the Supreme Court's decision in Henry Schein v. Archer, 139 S.Ct. 524, 529 (2019) are controlling authorities. A party resisting an otherwise facially valid arbitration agreement "bears the burden of proving that the claims at issue are unsuitable for arbitration."   *Green Tea Fin Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Again, Citibank should mitigate damages and agree to arbitrate this dispute without any further waste of time of the Florida state court system.    If Citibank wants to resist arbitration, then Schultz can file a lawsuit in the USDC and then resist a certain arbitration motion by Citibank resisting litigation in the USDC. Citibank may now resist arbitration now but it will certainly beg for arbitration later once the USDC enjoins it from continuing to violate the FCRA, FDCPA and other statutes. Obviously, Schultz intends to vigorously defend any claims of Citibank and prosecute claims against Citibank which far exceed those of Citibank.    This case is ripe for settlement as only the lawyers, and AAA, will get rich if not settled.    Dismissal of the case to proceed to arbitration is in Citibank's best interest.    In a April 26, 2022 Senate Committee on Banking, Senator Elizabeth Warren of Massachusetts had testimony with   CFPB Director, the Honorable Rohit Chopra , where Senator Warren talked about banks "still

P-22

50

screwing over consumers…it appears that cheating consumers is simply in [their] DNA."    When Senator Warren asked "what other steps should regulators consider to hold corporations that break the law over and over to hold them accountable", Director Chopra responded: "I see federal enforcers and regulators are very quick to lay the hammer down …They will name people individually.    They will ban them from certain business practices and often criminally refer them for prosecution.    We have to look at structural remedies that stop the law breaking from continuing.    Fines are not going to solve this."    Citibank runs the risk of alienating Senator Warren and Director Chopra and their teams of enforcers who could seek and obtain $100+ million in fines for repeated wilful conduct.    Director Chopra previously wrote that "The CFPB mission is to protect consumers from abusive and deceptive financial practices…We are focusing on… actors… causing harm…to take advantage of consumers and their law-abiding competitors.    You can also expect a sharper focus on repeat offenders."    This case was frivolously filed in malicious retaliation to numerous and exhaustive CFPB complaints alleging FCRA, FDCPA and other misconduct.    This court should not reward Citibank and assist it in its wrongdoing but rather end this fiasco and compel forced binding private arbitration with AAA.    [The ARBITRATION agreement states: "**Arbitration limits - Individual Claims filed in small claims court are not subject to arbitration, as long as the matter stays in small claims court. We won't arbitrate to collect a debt from you unless you choose to arbitrate or assert a Claim against us.    If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you.    You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt."]**    The first sentence may be called a "small claims court arbitration carve-out or exception" but due to numerous and extensive grounds to remove, transfer or otherwise strip the small court of jurisdiction, in favor of arbitration, the carve-out is meaningless as it can be avoided by strategic legal pleadings.    One example involves Citibank's compelling arbitration rather than resolving a simple small claims case regarding an account dispute against it in Arizona.    The Arizona Revised Statutes (A.R.S.

P-23
51

22-504) allows either party to a small claim to unilaterally (meaning without any other party's consent) remove it to a higher court by mere written request.  · This request is not reviewed.    It is automatically and immediately granted by statute.    In 2012, Daniel S. Dempsey ("Dempsey"), a previous employee of Citigroup's investment bank who banked with years at Citibank, sued Citibank N.A. in the Small Claims Division in Pima County Arizona seeking a refund of $289.50 due to Citibank's refusal to refund him for inappropriate account charges and late fees after several years of disputes ultimately wrongly affecting his credit and score.    The maximum theoretical liability to Citibank in small claims was $2,500 but it ended up with probably $100,000 in attorney fees and arbitration fees by transferring the case automatically out of small claims and automatically compelling arbitration despite the purported small claim court carve-out and exemption.    The Dempsey arbitration provision stated: "**Disputes Excluded from Arbitration.**    Disputes filed by you or by us individually in small claims court are not subject to arbitration, so long as the disputes remain in such court and advance only an individual (non-class, non-representative) claim for relief."      Rather than just treat customers and past employees fairly by making warranted small customer service concessions, Citibank has demonstrated a desire to ruin a customer's credit and cause a complete and unwarranted abuse of the *court* system, even though Citibank's legal pleadings were permitted and indisputable to automatically strip the lower court of jurisdiction to force the dispute to be resolved in arbitration. Dempsey believed that Citibank forced arbitration so that the small court case could remain private in arbitration to avoid public knowledge of how badly it treats customers.    "In moving to remove and force mandatory arbitration Citibank stated:    "Citibank affirmatively alleges that the ...Account Agreement ...[is] subject to mandatory arbitration pursuant to the terms of arbitration clauses in the Agreements, and pursuant to the Federal Arbitration Act, 9 U.S.C. 2 et seq, and/or under Arizona law."    A.R.S. 22-504. Transfer to justice court states: "A. If any party whose rights are or may be adjudicated by any action in the small claims division, at least ten days before the time set for

P-24

*52*

hearing objects to the proceeding being held in the small claims division, the action shall be transferred from the small claims division to the justice court and the provisions relating to civil actions in justice court shall apply."    In its motion (SEE EXHIBIT E, attached hereto), Citibank simultaneously cited A.R.S. 22-504 to unilaterally and automatically have his $289.50 valid dispute in small court claim removed to the higher Justice Court and citing the arbitration agreement's *Disputes Excluded from Arbitration clause* -- "...so long as the disputes remain in small claims court ,,," to force the newfound Justice Court into mandatory arbitration.    Dempsey published 2 articles in medium.com about Citibank's tactics in articles labelled "Tyranny of the Arbitrators And the End of Small Claims Court" and Tyranny and the Waterfall of Doom - a followup Part II"    (SEE EXHIBIT F, attached hereto and referenced as if specifically set forth at length herein). *Dempsey wrote in disgust that by unilaterally removing his small claims* court, Citibank had exposed its agreement to contain a DECEPTIVE TRAP that does not grant a right to small claims court.    Dempsey wrote in bold print in frustration of what he thought was a contractual right to access the small claims by stating: **Small claims disputes are not excluded from mandatory arbitration.** THERE IS NO EFFECTIVE CARVE-OUT OR EXCLUSION TO PREVENT CLAIMS FILED IN SMALL CLAIMS COURT FROM BEING ARBITRATED.    Despite Dempsey exhaustive page after page of grounds and argument why he believed he had a right to have the $289 dispute litigated in small claims court, he was wrong and Citibank had a right to remove the claim out of small claims court and compel arbitration, even though it cost Citibank $100,000 in fees to conceal the matter from the public.. The Arizona court made the simple, routine, straight-forward and correct decision as Citibank and any defendant can always compel arbitration of claims filed in small claims courts by transferring or otherwise stripping the small claims court of jurisdiction.    Dempsey's articles wrote: "Needless to say, this caught me by surprise.    Why would Citibank want to make resolution more time consuming, expensive and complicated?    Why would it include this exclusion clause if it intends to always have small claims removed?"    Dempsey believed that he was tricked and deceived by Citibank.

P-25

53

Citibank argued in Justice Court, April 4, 2012: "Mr. Dempsey contends that because he filed in Small Claims Court, his case cannot be arbitrated.   The [Agreement] Arbitration Exclusions plainly say otherwise.   **Only cases that 'remain' in Small Claims Court cannot be arbitrated.   Here, Citibank has transferred the case to Justice Court.   Because the case did not "remain in small claims court, it must be arbitrated."** [Emphasis added]. Dempsey wrote: "what's the point of including a special misleading section" for small claims court, if any claim can be forced to arbitration."   Dempsey further wrote: "If Citibank intends to arbitrate small court claims, why not simply say so?   Why mislead customers into believing small court claims are excluded? Who else is Citibank deceiving?"   Similarly, Schultz demands arbitration and has formally elected and chosen arbitration in 8 CFPB complaints involving Citibank and its counsel. Citibank cannot in good faith force arbitration against Dempsey's small court claim in Arizona and now object to Schultz's instant motion to compel arbitration on significantly stronger issues.   Citibank cannot cherry pick what claims to litigate and what claims to arbitrate based on the sophistication or resources of opponents. This case must be arbitrated.   When looking at federal court diversity jurisdiction regarding amount, Congress made it simple, $50,000 previously now $75,000.   It is unfair to have different states having different amounts and limitations in different states.   How can the intent of Citibank's arbitration agreement deal with Florida's ever increase filing amounts, recently changed from $5,000 to $8,00 several years ago and to other states with extremely low amounts, including Arizona which as discussed allows any small claims action to be forced into arbitration.   Arbitration agreements pursuant to the FAA should provide parties to be treated equally and according to the same standards and not be affected by a forum state.   Citibank's lawyer in the Arizona court followed the law to force arbitration of a small court   case. Schultz should not have to litigate in multiple courts as to the right to compel arbitration in this frivolously inappropriate case involving disputes exceeding this court's jurisdiction having federal questions best dealt with the USDC. Every court should consider the jurisdictional limits of the applicable state court

P-26

54

at the inception of the arbitration agreement issue date, such as the year 2000, so that Citibank could not defeat arbitrability merely for claims impacted by state increase of small court jurisdictional amounts.    If this claim was for $2,000 and the small claims limit was $1,000, a small claims carve-out should be inappropriate.    This court should treat me as fairly as the Arizona statutes allow and compel arbitration, without forcing other claims, counterclaims and litigation in other courts.    Nonetheless, the dispute involves federal claims and amounts exceeding this court's jurisdiction so the case must at a minimum be forced to arbitration staying the case until the completion of arbitration.    In deciding this motion, this court must consider the repeated and deliberate bad faith, illegal and unconscionable conduct by Citibank.    Shareholders of Citibank never bargained for spending and wasting $100,000 in fees in the Dempsey $289 dispute.    Similarly, Citibank should wake up and seek to mitigate its damages. Voluntary formal dismissal of this case, none really exists, would go along way to resolve disputes.    Clearly, Citibank will ultimately make its own motions to compel arbitration for any and all disputes after Schultz makes claims in this another court.    However, Citibank will certainly face injunctive relief motions in a USDC to comply with the FCRA, FDCPRA and other statutes, including Federal Rule 11.    Regardless of what an arbitrator finds, the USDC will consider the statutory damages mandated by law for wilful misconduct.    [THE SMALL CLAIMS COURT MEANINGLESS COURT CARVE-OUT IS BARRED BY THE DEBT EXEMPTION AND CARVE-OUT PERMITTING ANY PARTY TO CHOOSE TO ARBITRATE INCLUDING CLAIMS TO COLLECT A DEBT] The arbitration provisions state:, after the Small Claims carve-out: "We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you.    *__You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.__*"    Claims to collect a DEBT, including this instant case, are specifically exempted and carved-out from the Small Claims Court provisions. The arbitration provision lists numerous types of Covered claims but the above provision mandates arbitration of any claims to

P-27                                                                55

collect a Debt including debt collection claims filed in the Small Claims Court. Any one of the numerous grounds for compelling arbitration and staying/dismissing the case Claim against us.    In combination, the court must grant the relief requested and force arbitration.


**(Filed 6/29/2023 7:38 AM in State Court)**
**SUPPLEMENTAL ARGUMENT AND CASE LAW**
**THAT THERE IS NOT A SMALL CLAIMS COURT IN**
**FLORIDA SMALL CLAIMS RULES**
**DO NOT CREATE A SMALL CLAIMS COURT**
**TO PREVENT ARBITRATION**
**IN FURTHER SUPPORT OF**
**PRO SE DEFENDANT THOMAS SCHULTZ'S MOTION TO COMPEL**
**MANDATORY PRIVATE BINDING ARBITRATION WITH THE**
**AMERICAN ARBITRATION ASSOCIATION ("AAA") AND TO STAY**
**THIS CASE PENDING THE PARTIES' COMPLETION OF PRIVATE**
**ARBITRATION, OR, ALTERNATIVELY, DISMISSING THIS CASE AS**
**NULL AND VOID AB INITIO AS SCHULTZ FORMALLY CHOSE**
**ARBITRATION AND ARBITRATION WAS PENDING AND EFFECTIVE**
**IN MAY 2023 AND THIS CASE WAS ABANDONED AND NEVER**
**SERVED SINCE E-FILING ON JUNE 2, 2023**

Pro Se (non-attorney) Defendant Thomas Schultz ("Schultz") prudently files this Supplemental Argument and Case law (the "Supplement") in further support of the above reference "Motion to Compel…Arbitration…" (the "Motion"). Schultz's Motion goes into extensive detail to address. in advance, every possible point that may be raised to oppose the Arbitration Motion to avoid a rushed reply, if necessary.    There is a presumption that Citibank's extremely experienced lead counsel knows relevant case law and that this Court should also know the relevant case law, including the cases set forth herein. However, Schultz, as a non-attorney, is at a significant disadvantage and must therefore submit much more than the necessary facts, documentation, argument and case law to support every point in the Motion.    Schultz therefore submits attachments of relevant case law in addition to the analysis of such case law below in further support of the Motion.


In *Lasalla v. Pools by George of Pinellas Cnty., Inc.*, 125 So. 3d 1016 (Fla. 2d Dist. Ct. App. 2013), (**SEE EXHIBIT A**, attached hereto for copy of decision with relevant sections marked), the Florida Court of Appeals stated:

P-28

56

"...<u>a county court that applies the Florida Small Claims Rules in a particular proceeding is not a separate court from a county court that applies the Florida Rules of Civil Procedure</u>. <u>This is true even if a county court has elected to create a "small claims division" to handle cases under the Florida Small Claims Rules...</u> This case began in 2006 as a two-count complaint filed in the small claims division of the Pinellas County Court [for] $5,000 from LaSalla for breach of a contract.    PBG claimed that it had performed work on Mr. LaSalla's pool deck for which it had not been paid.... <u>Not all county courts choose to have small claims divisions</u>.    Pinellas County does have such a division.    <u>The Florida Small Claims Rules do not discuss the need for such a division but describe the scope of the rules as follows</u>:    These rules are applicable to all actions at law of a civil nature in the county courts in which the demand or value of property involved does not exceed $5,000 exclusive of costs, interest, and attorneys' fees. Fla. Sm. Cl. R. 7.010(b).    <u>These rules do not create a "small claims court."    They simply create rules of procedure for use in county court when the amount in controversy is small.</u>    If the amount in controversy changes during a proceeding and exceeds the amount specified in the small claims rules, but is not large enough to warrant a transfer to circuit court, the parties should be entitled to request the court to begin using the Florida Rules of Civil Procedure... A shift to these rules, however, is not a change of "jurisdiction" or a transfer to another court. [footnote 2: In Pinellas County, Administrative Order No. 91-19 addresses cases that are "transferred" from the small claims division to the county civil division and vice-versa...Thus, <u>for practical purposes, the "transfer" merely shifts the rules of procedure applicable to the courtroom</u>.    *In re Section Assignments*, Fla. Admin. Order No. 91-19...]    <u>As a constitutional matter, it would be impossible for the legislature or the supreme court to establish a separate small claims court unless the constitution were first amended</u>.    Article V, section 1 of the Florida Constitution specifies that "judicial power shall be vested in the supreme court, district courts of appeal, circuit courts and county courts." It expressly states: "No other courts may be established by the state, any political subdivision or any municipality." "

<u>Since Florida does not have a Small Claims Court, just small claims rules in selected courts throughout Florida, any argued small claims court carve out to oppose Schultz Motion would be patently frivolous and filed in bad faith as further argued in the Motion</u>.

*Conner v. Moran*, 278 So.3d 790 (Fla. 1ˢᵗ Dist. Ct. App. 2019) (<u>SEE EXHIBIT B</u>, attached hereto for a copy of the decision with relevant sections marked) involved a case for a $5,000 claim filed under rule 7.050, Florida Small Claims Rules

P-29

57

where Moran moved to transfer the case to county court based on her allegation

that her counterclaim raised an amount in controversy which exceeded the small

claims jurisdiction threshold of $5,000 but below the $15,000 county court limit.

The First DCA wrote:

"After a hearing, the county court denied Appellant's motion to transfer the case.
The county judge noted that the case was pending in county court, that the
amount in controversy did not exceed $15,000, and that transfer within the county
court --from small claims to civil-- was not available because a county court hears
both small claims and other claims up to $15,000…Appellant continued her quest
to litigate the amount in controversy…to compel transfer of the case within the
county court.    **The circuit court denied the writ, finding that the county
court did not have a separate division for small claims**, that less than $15,000
was at issue, and the county court had jurisdiction over the case regardless of
whether it applied the Small Claims Rules or the Rules of Civil Procedures. …
**Appellant appears to misapprehend the nature of Small Claims
Rules which do not create a separate "Small Claims Court" even
if colloquially referred to by that name. "[F]or the purposes of the
concept of subject matter jurisdiction, a county court that applies
the Florida Small Claims Rules in a particular proceeding is not a
separate court from a county court that applies the Florida Rules
of Civil Procedure."** *LaSalla v. Pools by George of Pinellas Cty, Inc.*, 125 So.
3d 1016, 1016 (Fla. 2d DCA 2013).    "This is true even if a county court has
elected to create a "small claims division" to handle cases under the Florida Small
Claims Rules." Id.    "

**Again, another Florida of Court of Appeals has decided that there is NOT**

**any small claims court in Florida, just Florida Small Claims Rules for**

**limited procedural matters in certain county courts but not every court.**

When certain courts have not adopted small claims rules, it would be frivolous to

allege and argue that Arbitration could be barred in jurisdictions with small

claims rules but not in jurisdictions not adopting small claims rules.    **Again,**

**Florida does not have a Small Claims Court, Arbitration is clearly**

**warranted and the Motion cannot in opposed in good faith.**

In *Chad Handy v. Countertops to Go, LLC*, (**SEE EXHIBIT C**, attached hereto

for a copy of the 5th DCA decision with relevant sections marked) stating:

"Countertops To Go, LLC responded by filing a Motion for Summary Judgment
under Florida Small Claims Rules 7.110(b) and 7.135 arguing that all counts
should be dismissed because the dispute must be settled by arbitration.    After a
hearing, the trial court entered a order granting the Motion for Summary

*P-30*

*58*

Disposition, **ordering the parties to arbitrate**. In rejecting Handy's argument for a stay pending arbitration, the trial court erred.   Pursuant to section 682.03, Florida Statutes (2020), the imposition of a stay, not an order of dismissal is the appropriate disposition when a matter is sent to arbitration..."

The Fifth DCA upheld the lower court decision in part by affirming the decision to compel Arbitration of the small claims rules case but stayed the lower court case pending arbitration finding a stay of any proceedings, not dismissal, is mandatory when the court compels arbitration.   As stated in the Motion, compelling Arbitration in small claimed amount cases is nothing new so Schultz has an absolute right to have this case sent to Arbitration pursuant to the clear arbitration provisions with stay of the case until the final completion of arbitration by the parties.

Finally, in *Litchford v. Duetsch*, Orange County Court of Florida Lower Court Case No. 2007-SC-14355 (Judge Nancy L. Clark)   (**SEE EXHIBIT D**, attached hereto for a copy of the relevant part of the appellate decision with relevant sections marked) the small amount case for damages for $3,575.15 was filed in the circuit court and more than 3 months later transferred to the County court with all future proceedings to be conducted pursuant to the Florida Rules of Civil Procedure.   A month later, a motion to dismiss or compel arbitration was filed and about 50 days later the parties acknowledge the enforceability of the arbitration provision and stipulated that the dispute fell within the parameters of the arbitration provision.   Judge Clark granted the motion to compel arbitration which was appealed.   The case for the small amount of $3,575.15 case, which Judge Clark ordered the parties to arbitrate, clearly demonstrates that small amount cases can be compelled to arbitrate.   Schultz has chosen arbitration and demanded arbitration prior to this case filing and this overwhelming factual documentation and legal argument herein and previously submitted supports the Motion to be granted in its entirety.

*P-31*         WHEREFORE, Pro Se (non-attorney) Defendant Thomas Schultz       *59*
respectfully requests that this Court, pursuant to the Federal Arbitration Act

## ADDITIONAL FACTUAL MATTERS AND EVIDENCE REGARDING ONGOING WILLFUL FCRA AND FDCPA VIOLATIONS BY CITIBANK

Schultz voluntarily closed all of his 9 credit card account over 2 years ago from June 17, 2021 to July 12, 2021 due to what Schultz considered fraudulent and deceptive interest rate and payment bait and switch and other illegal conduct by Citibank.    Under duress, Schultz paid off 2 Citibank accounts shortly thereafter in mid 2021, leaving 7 accounts which Schultz disputed for illegal interest rate increases and charges after the mid 2021 account closings.    Due to Schultz's insistence, Citibank ultimately, but over 9 months late, reported to every credit reporting agency (CRA) the 7 accounts as "Closed at request of consumer" with the specific June/July 2021 closing dates.    The FCRA requires mid-cycle immediate updates when an account is closed, including accounts voluntarily closed by consumer.    Even waiting till the next monthly reporting cycle constitutes a willful violation of the FCRA.    Waiting almost 12 months to list Schultz's 9 accounts as "voluntarily closed by consumer" or "closed at consumer's request" using the required Metro 2 data code constitutes willful violations of the FCRA claimed by Schultz in this matter for which Schultz demands statutory damages of $1,000 for each of the 9 accounts, plus punitive damages.    Schultz was not required to pursue and pursue Citibank to enforce FCRA compliance.    Schultz had a perfect payment record on every credit card, including the 7 with Citibank until Hurricane Ian hit Orlando in September 2022.    Schultz asked Citibank and all creditors for publicly promised relief which was improperly denied after virtually hundreds of hours of phone calls.    Schultz discovered that creditors, including Citibank, retaliated by willfully and/or negligently filing false data on credit reports including that Schultz was 60 days late, before hurricane Ian, when no payment was ever late. Such inaccurate undisclosed 60 day late payment, reported by Citibank with inaccurate Date of First Delinquency (**SEE EXHIBITS 102-1 thru 102-18**, attached hereto), resulted in a 100+ point lower credit score than what it would otherwise be.    Schultz obtained credit reports from Experian, Equifax and TransUnion and discovered that paper credit reports only included a small portion of credit data reported by credit furnishers, including Citibank, and included in CRA files in complete violation of the FCRA., 15 U.S.C. § 1681 et seq.    Thus, paper credit reports lacking complete and accurate data in CRA files would prohibit consumers from disputing concealed inaccurate and incomplete data visible by others.    Moreover, despite Schultz's objections on various phone calls, Citibank fraudulently continued to illegally take 7 unauthorized monthly payments after Hurricane Ian from Schultz's Social Security checking

A-1

60

account refusing to return them even after filing multiple complaints with the Consumer Financial Protection Board (CFPB).    A comparison of every CRA paper and online credit report demonstrated widespread differences of data including inconsistent, missing, facially false, and incomplete and inaccurate data for which direct and indirect disputes were filed with Citibank and every CRA, including many sent via the CFPB portal to guarantee receipt and mandating investigation which was not properly done to correct data or delete accounts as requested numerous times.    Before going in detail of steps taken to dispute data, it is important to note that despite almost a year of never ending disputing of inaccurate data, Citibank still inaccurately reports the important Date of First Delinquency as 08/2022 (**SEE EXHIBITS 102-1 thru 102-18**, attached here) despite proof that every payment with Citibank was timely made through October 2022 by direct draft of Schultz's checking account by Citibank.    Citibank is incapable of complying with its credit reporting requirements. On 11/21/2022, Schultz sent a detailed 18 page letter with 28 pages of exhibits which is letter is reproduced at pages 6 thru 28 of this Complaint.    Schultz has attached the 28 pages of Exhibits to said 11/21/2022 letter with specific FCRA violations for each exhibit. (**SEE EXHIBIT 101**, attached hereto).    Schultz complained about Citibank's Discrimination and intentional FCRA violations and such dispute was sent and received by Citibank, Experian, Equifax, TransUnion and the CFPB, starting the dispute process, requiring every CRA to notify Citibank to perform the required investigation.    Since the disputes were filed with every CRA and not reasonably addressed, Citibank has liability for FCRA statutory willful damages.    The letter with exhibits was sent to and received by certified mail return receipt requested by CFPB, TransUnion, Equifax, Experian and Citibank.    There are so many deficiencies and violations of the FCRA documented in the statements and evidence that it is indisputable that Citibank is in willful and deliberate violation of the FCRA for which Citibank is liable to Schultz for damages claimed by Schultz.    Not only did Citibank and every CRA fail to investigate as required but they continued to fail to report accounts as disputed as required and accurately report data.    Schultz will explain how the attached documents are inaccurate and how Schultz's claims are appropriate.    **Exhibit 102-1** is a copy of Schultz's Equifax credit report of 12-15-2022 for Citibank acct # 8334 which inaccurately reports the Date of 1st Delinquency as 08/2022 despite proof submitted that Citibank withdrew automatic drafts in October on all 7 of Schultz's accounts and Schultz was not delinquent on 08/2022 further proven impossible since conflicting data shows 30 days late on 12/15/2022. The CFPB Director Rohit Chopra issue the CFPB advisory opinion "Fair Credit Reporting; Facially False Data" (**SEE**

A-2                                                                                                          61

**EXHIBITS 102-22 to 102-28**, attached hereto) which states: "**A violation is willful when it is inconsistent with "authoritative guidance from a relevant agency**." The Facially False reporting of the Date of First Delinquency as 08/2022 is not only inaccurate due to payments through October 2022 and balance reductions evidencing payments but it is inconsistent with the 30 day late payment status as of 12/15/2022.    Therefore, the inaccurate Facially False Data remaining on Schultz's credit reports for almost a year constitutes multiple ongoing separate and distinct WILLFUL FCRA violations for each of the 7 Citibank accounts as a matter of law without inquiry or further investigation of the facts.    Citibank and every CRA knew that the data was inconsistent and false yet failed to take appropriate safeguards to prevent such Facially False Date appearing on credit reports.    Obviously, Schultz filed extensive disputes, including the 11/21/2022 dispute with Citibank and every CRA, but the 12/15/2022 report fails to include the requisite DISPUTE by Consumer on the report as required by the FCRA.    Citibank has failed to include the required "Actual Payment Amount" and the "Amount Past Due" as required to completely and accurately report data.    Further, the mere placing a "Status - 30-59 Days Past Due" does not relieve Citibank from inserting an actual amount past due which can lead by omission to Facially False Data from being discovered and corrected by both Citibank and every CRA.    Data from November 2022 is missing and the report is incomplete which appears all of the time.    Each and every credit report for Equifax, Experian and TransUnion from November 2022 thru 6/26/2023, including those in **EXHIBITS 102-1 and 102-18,** have the same identical issues of reporting Facially False Data of a Date of First Delinquency, incomplete, missing or required dispute data. Therefore, the analysis for every credit report Exhibit is the same.    **Exhibits 102-19 thru 102-21** include CFPB complaints against Citibank to every CRA for failing to include the accurate Date of First Delinquency or failing to report it at all and failing to report accurate payment data in compliance with Metro 2 standards required by the FCRA.    Despite complaint after complaint to Citibank, every CRA and the CFPB, Citibank refuses to comply with the FCRA and its obligations.    No other remedy exists to obtain compliance except this federal action.    Schultz asks this Court to order Citibank to delete every account from every CRA as Citibank cannot comply with the FCRA.    On May 14, 2023, Schultz printed his credit report balances using CreditKarma which disclosed that **his 9 Citibank account balances were each $0** as of the dates listed which included $0 balances for the 7 closed accounts that Citibank alleges balances are owed and sued for illegally.    **EXHIBITS 102-29-102-32** .

*A-3*

*62*

Citibank cannot sue for $0 if $0 is claimed owed by Citibank on every Citibank account. Schultz believes that Citibank may be illegally tampering with Schultz's credit report as issues have arisen only after Citibank retained debt collectors and his credit reports were illegally accessed by its debt collector on May 17, and May 20 and June 23 by Citibank.    All data from Citibank reported to every CRA is not reliable.    In light of Citibank's obvious willful violations of the FCRA for reporting inaccurate Dates of First Delinquency as 07/2022 or 08/2022, at a minimum Schultz, is entitled to $7,000 in statutory damages and $63,000 in punitive damages pursuant to the CFPB Facially False Data advisory opinion dated October 26, 2022.    Any state court claims have a frivolous pretense to reality.    **EXHIBIT 102-33** includes acknowledgments from Citibank's Citi Executive Response group on 12/7/2022 regarding the 11/21/2022 discrimination complaint and FCRA dispute to Citibank, Experian, Equifax, TransUnion and the CFPB.    Obviously, Citibank received the disputes both directly and indirectly from every CRA so it is liable for wrongdoing via this action.    Despite the FCRA disputes, Citibank failed to report the accounts as disputed by consumer as required by the FCRA. **EXHIBIT 102-34** includes a change to Schultz's credit reports by Citibank where between Nov 20-Nov21, 2022, Citibank added a dispute but removed the remark "Account closed at consumer's request".    Removing a PERMANENT Closed Account designation is required to be blocked from change. It is just another example of failing to catch Facially False Data errors. All of Schultz's 7 closed accounts had their closed status illegally removed on various occasions but there are so many Citibank errors that it is too burdensome to list at this time.    **EXHIBIT 102-35** lists a page from 6/8/2023 on Schultz's credit reports with 3 of the 7 Citibank closed accounts with the dates of closure on July 7, 2021 and June 18, 2021.    Two days later, on 6/10/2023, Schultz's credit reports had the dates of account closures DELETED from Schultz's credit reports. **EXHIBIT 102-36**. Consumers cannot correct inaccurate data if, without notice or reason, account errors may be reported over and over again.    Having failed to report accurate and complete credit data, this Court must direct Citibank to permanently delete Schultz's accounts.    There can be no doubt about the level of frustration and emotional damaged experienced by Schultz's inability to enforce the FCRA by Citibank's illegal conduct. **EXHIBIT 102-37** includes a change of Schultz's credit report in December 2022, changing payment status from a derogatory status to Current.    However, the Date of First Delinquency remained at August 2022 or July 2022 in complete disregard for the Facially False Data advisory opinion.    Obviously, WILLFUL FCRA violations mandate another maximum Statutory penalty of $1,000 plus $9,000 in punitive damages.    **EXHIBIT 102-38** also show

*63*

*A-4*

proof that Citibank's Date of First Delinquency of 08/2022 is inaccurate and a Facially False Data violation.   **EXHIBIT 102-39** includes another example where Citibank between Dec 8 and Dec 9, 2022 removed the remark "Account closed by consumer" in willful violation of the FCRA.   **EXHIBIT 102-40** includes another example where an Account closed by consumer was removed illegally from Schultz's credit reports.   Again, between Dec 13 and Dec 14, 2022, Citibank removed the remark Account closed by consumer.   Finally, Schultz attaches proof of his filing a 5/3/2023 and 5/04/2023 debt validation notice with the CFPB directed to Citibank's debt collector.   **EXHIBIT 102-42** .   Based upon the facts and evidence provided herein, Schultz now proceeds to the causes of actions in this case

A-5

64

## AS AND FOR A FIRST CAUSE OF ACTION

### Violation of the Fair Credit Reporting Act (FCRA)
### Unlawfully Obtaining Schultz's Credit Reports

Schultz claims and alleges that Citibank, possibly with the approval of its counsel, RAS LAVRAR,
violated the FCRA by unlawfully obtaining his credit report 4 times. To wit, Schultz's Experian
credit report of 6/26/2023 documents that on **5/17/2023**, "RAS LAVRAR LLC…", lawfirm for
Citibank, at the direction of Citibank, pulled Schultz's credit report.    Again, Citibank, probably with
the approval of its counsel, RAS LAVRAR LLC, again violated the FCRA by unlawfully obtaining
his credit report. To wit, Schultz's Equifax's paper credit report dated 6/26/2023 at page 81 (attached
to state court pleadings) documents that on **6/23/2023** CITIBANK NA pulled his credit report and
again on **5/30/2023** CITI CARDS CBNA also pulled his credit report.    Schultz contends that each
and every one of the 3 credit pulls violated two separate FCRA provisions: **one that prohibits
obtaining a credit report for an improper purpose, and one that prohibits obtaining a credit
report under false pretenses**. Schultz has a plausible claim for each of these 4 separate and distinct
violations. There was actually a fourth illegal credit pull around 6/23/2023 but 3 or 4 is still terrible.
The FCRA prohibits a person from using or obtaining a credit report for any purpose unless "the
consumer report is obtained for a purpose for which the consumer report is authorized to be furnished
under this section." 15 U.S.C. § 1681b(f)(1). The FCRA narrowly circumscribes the purposes for
which a person may obtain a credit report. See id. § 1681b(a)(3) (listing exhaustively all purposes for
which a person may obtain a credit report). Among other purposes, a person may obtain a credit
report to "use the information in connection with a credit transaction involving the consumer on
whom the information is to be furnished and involving the extension of credit to, or review or
collection of an account of, the consumer." Id. § 1681b(a)(3)(A).    The statute also requires the
"prospective user" of the report to certify the purpose for which the credit report is sought and to
certify the report will be used for no other purpose. 15 U.S.C. § 1681b(f)(2) (requiring certification
according to the procedure set out in 15 U.S.C. § 1681e(a) ). Schultz also alleges that Citibank, also
using its tradename, "Citi cards CBNA", both having an identical address and phone number (PO
Box 6241 Sioux Falls SD 571176242 Phone: 8009955114) violated the certification requirement by
illegally accessing credit reports 3 times. This argument is easily dispensed with. Most obviously,
Citibank (and its lawfirm RAS LAVRAR) failed to certify as the user of the report the true purpose
for which the information is sought. What's more, to comply with § 1681b(f), a person seeking a
consumer report must both obtain it for a purpose authorized by the FCRA and certify the purpose

65

*1-1 CAUSE 1*

according to § 1681e(a). Failing to do either will give rise to liability. Schultz alleges both.    Schultz alleges Citibank obtained his credit report on May 17, 2023, May 30, 2023 and also on June 23, 2023 for use solely in litigation.    During April 2023, Citibank referred accounts to 2 law firms, RAS LaVrar LLC and Patrick A. Carey, P.A., who sent short form debt validation letters to Schultz. Schultz promptly and timely responded by filing extensive and exhaustive debt validation responses with 4 CFPB 30 page complaints served on counsel for Citibank between 5/3/2023 and 5/05/2023 under CFPB case numbers 230503-11004160, 230504-1108054, 230505-11017094 and 230505-11017236.    Schultz disputed any and all claims of Citibank further alleging that Citibank owed Schultz huge amounts for statutory and punitive damages for Citibank's willful violations of the FCRA documented in numerous direct and indirect disputes filed in CFPB complaints in the last 8 months. Schultz also demanded that Citibank permanently delete each and every Citibank account from CRA's as the continual reporting of incomplete and inaccurate data was grounds to bar further credit reporting on grounds of privacy.    **Schultz further demanded that all disputes of any kind be resolved through Arbitration pursuant to Citibank's arbitration agreement**.    **Schultz clearly demanded arbitration and filed his election to arbitrate any and all disputes including Schultz's claims against Citibank**.    Schultz went into great detail about the pitfalls of court litigation with Arbitration agreements and a desire to avoid expensive state and federal court litigation and anticipated appeals if Arbitration is attempted to be avoided by Citibank. **Schultz demanded that Citibank file arbitration papers and pay the arbitration fees so that the elected arbitration could move forward**.    Citibank's lead counsel jumped the gun without getting all its ducks in a row without having any idea of the issues and disputes by filing 3 barred cases in this court on 6/2/2023, 6/16/2023 and 7/7/2023.    To retaliate, on May 17, 2023, May 30, 2023, RAS LAVRAR and Citi Cards CBNA illegally obtained Schultz's credit report from both Experian and Equifax and 3 days later, on June 2, 2023, Citibank's lawfirm, RAS LAVRAR, filed a barred lawsuit against Schultz despite the fact that Schultz properly elected arbitration and demanded arbitration. On June 16, 2023, Citibank filed a second barred lawsuit. On June 20, 2023, Schultz, filed Motions to Compel Arbitration in both related cases assigned to Judges Johnson and Sandor which were received by Citibank electronically on June 20, 2023 and by us mail.    Again, in retaliation, Citibank 3 days later obtained Schultz's Equifax credit report on June 23, 2023.    Pulling Schultz's credit reports more than once had no real purpose except for different agents or employees wanting to take a peak for no real purpose other than to harass. Was the true purpose an attempt for attorneys trying to get more business by contacting creditors listed on Schultz's credit reports?    It violates the FCRA to obtain a consumer report for use in litigation or ambulance chasing. Litigation does not appear in the

66

1-2

exhaustive list of purposes for which the FCRA authorizes a person to obtain a credit report. See 15 U.S.C. § 1681b ; see also Bakker v. McKinnon, 152 F.3d 1007, 1012 (8th Cir. 1998) (rejecting the argument that the defendant, "an attorney representing clients in litigation, ... had a business need to obtain credit reports on the opposing parties"); Duncan v. Handmaker, 149 F.3d 424, 427 (6th Cir. 1998) ("[T]rial preparation generally does not fall within the scope of § 1681b."). Given the timing, Citibank might plausibly have obtained Schultz's credit report for use in litigation or mounting an attack with other creditors of Schultz by counsel for Citibank. Schultz also adequately alleges a willful violation of the statute. Schultz alleges Citibank obtained the report multiple times for use in litigation even though the statute, which sets out an exhaustive list of permissible purposes, nowhere authorizes the use of credit reports in litigation or ambulance chasing. These actions plausibly "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69, 127 S. Ct. at 2215. The statute plainly says a consumer reporting agency may "furnish a [credit report] under the following circumstances and no other." 15 U.S.C. § 1681b(a) (emphasis added).    Even a careless reader would understand that the statute's list of permissible purposes is exhaustive.

Separately, the FCRA makes it a crime to "knowingly and willfully obtain[ ] information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q. This crime, contained in the same subchapter as the rest of the FCRA, is enforceable by the FCRA's private right of action. Id. § 1681n ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer ...."); id. § 1681o ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer ...."); see Kennedy v. Border City Sav. & Loan Ass'n, 747 F.2d 367, 369 (6th Cir. 1984) (holding a civil cause of action exists under § 1681n to enforce § 1681q ); Hansen v. Morgan, 582 F.2d 1214, 1221 (9th Cir. 1978) (same). The 11th circuit has addressed the meaning of "false pretenses" in § 1681q of the FRCA. Consistent with every other court to address this issue, it now holds, under Pinson v. JPMorgan Chase Bank, 942 F.3d 1200 (11th Cir. 2019) that intentionally obtaining a credit report under the guise of a permissible purpose while intending to use the report for an impermissible purpose can constitute false pretenses under § 1681q. Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction, 811 F.2d 1368, 1370 (6th Cir. 1987) (per curiam); Hansen, 582 F.2d at 1219–20 ; see also Veno v. AT&T Corp., 297 F. Supp. 2d 379, 385 (D. Mass. 2003). Negligent misrepresentation of the purpose will not suffice for liability under § 1681q ; the offending party must intentionally misrepresent his purpose for obtaining the

67

1-3

credit report.    Just as Schultz alleged enough to state a violation of § 1681b(f), he has alleged enough to state a violation of § 1681q. Schultz alleges that Citibank "knowingly and willfully made false representations [to Experian and Equifax] to obtain information," "failed to disclose [its] true motivation in obtaining information …[ to Experian and Equifax]," and "knowingly and willfully obtained information ... [from Experian and Equifax] for use in litigation or ambulance chasing." All Schultz must do to survive a motion to dismiss in a this action is state a plausible claim on which relief can be granted. Not a surefire claim, not one likely to succeed. A plausible claim, supported by enough factual allegations for a "court to draw the reasonable inference that Citibank is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Under this standard, Schultz has valid claims with statutory damages of $1,000 per violation plus at least 9 fold punitive damages of $9,000 on this issue alone far exceeding Citibank's frivolous claims, actionable in the US District Court in Orlando for statutory and punitive damages. Given that a crime was most likely commited, Citibank and its offending individuals may want to rethink their whole life for their bad decision. Schultz's Motion to Compel Arbitration, filed 6/20/2023, detailed a complex ongoing dispute which begun as a deceptive bait and switch tactic by Citibank so offensive that Schultz closed 9 Citibank credit cards in or about June/July 2021, about 2 years ago.    Starting in September 2022, Schultz made numerous verbal and written complaints against Citibank for discrimination, retaliation, deceptive practices, …, …, and willful FCRA violations most of which were filed in writing with the Consumer Financial Protection Board ("CFPB"). On November 21, 2022, Schultz wrote a detailed 18 page letter with extensive confidential self explanatory documents with the heading "Citibank Discrimination - Hurricane Ian/Covid-19 & FCRA intentional violations" which were all sent by certified US Mail return receipt requested to (1) CFPB, (2) Trans Union Consumer Relations, (3) Equifax Information Services L.L.C., (4) Experian NCAC, and (5) Citibank Billing Dispute.    All 5 packages were received as the green receipts were received back. Citibank received the package as a direct dispute of inaccurate data yet failed to take any action to comply with the FCRA.    Citibank also received the disputes through the indirect disputes filed with the 3 credit reporting agencies ("CRA") yet again neither Citibank nor any of the CRA's took any action to comply with their obligations.    Subsequently, Schultz filed at least 30 complaints with the CFPB obtaining separate case numbers against Citibank (as direct disputes) and every CRA (as indirect disputes) yet inaccurate data was never corrected and data required by the FCRA and the Metro 2 360 page guidelines for reporting data to CRA's was missing such that FCRA and Metro 2 compliance had been violated.    In every one of the CFPB complaints, Schultz demanded statutory damages of $1,000 for each and every one of the multiple

68

1-4

obligations willfully violated by Citibank and each of the CRA's also claiming a right to punitive damages where a 9 fold multiple is reasonable.   Statutory damages against violators could reasonably exceed $100,000 with punitive damages in favor of Schultz exceeding $500,000.   The entire dispute started with Citibank's discrimination and retaliatory action which just continues and continues.   Through this entire time up to May 17, 2023 and May 30, 2023, Citibank never pulled Schultz's credit report despite the heated complex dispute which Citibank refused to address and comply with its Metro 2 compliance obligations and the FCRA obligations.   Obviously, Citibank hates Schultz and its actions and multiple court filings against Schultz are malicious and retaliatory to silence Schultz and prevent Schultz from further whistleblowing problems at Citibank to the CFPB. Schultz was current with every creditor, including Citibank, through October 31, 2022 until it was obvious Citibank refused to comply with its obligations.   Before the June 2021 closure of Schultz's 9 Citibank accounts, Citibank never pulled Schultz's credit report.   Citibank never pulled Schultz's credit report after closure of all 9 accounts from June 2021 through October 2022.   Citibank never pulled Schultz's credit reports from October 2022 through May 29, 2023, despite extensive FCRA violations and CFPB complaints.   There was never a bona fide need to pull Schultz's entire credit report as Citibank's 9 accounts were closed in June/July 2021 for deceptive practices and Schultz's account data with other creditors was private, irrelevant and not discoverable by Citibank especially in light of Citibank's FCRA willful violations and its inability to understand and comply with the complex obligations of Metro 2 compliance requirements.   Citibank long ago waived its rights to access Schultz's credit reports. Citibank knew what it had been reporting monthly and more often when required. In fact, Schultz's dispute revolves around discovery of every Metro 2 submission from Citibank to prove the incomplete and inaccurate data required by Metro 2 and the FCRA. Citibank should be looking at every one of its own data submissions rather than looking at what other creditors are reporting on Schultz's credit reports.   Quite simply, Schultz is entitled to obtain copies of every data submission by Citibank on every account of Schultz.   However, Citibank is prohibited from seeing what other purported creditors are reporting on Schultz's credit reports.   There was absolutely no purpose whatsoever for Citibank to see Schultz's credit report on 5/17/2023, 5/30/2023 and 6/23/2023 except to harass, intimidate and threaten Schultz.   The only conceivable purpose to see Schultz's credit reports was for some Ambulance Chaser to illegally see what other creditors it could contact to lead a joint assault upon Schultz from multiple creditors to obtain legal fees from additional clients.   Using credit reports illegally to drum up clients to sue for fees is NOT a permissible purpose but rather a serious criminal matter which could lead to disbarment proceedings. Finally, after Citibank charged off 7 of Schultz's accounts, it referred various accounts to 2 law

69

1-5

offices who sent debt validation letters to Schultz as set forth in attachments to the Motions to Compel Arbitration. Since Schultz obviously disputed any and all accounts for FCRA statutory damages, Schultz filed 8 CFPB complaints with about 30+ pages of responses, including disputing claims, cease and desist notices, prohibition against further credit reporting due to privacy violations, demands that Citibank's accounts be deleted from credit reports for failing to delete inaccurate and incomplete data and a discontinue harassment of any kind.    More importantly, __Schultz demanded__ __private arbitration and elected to arbitrate and chose to arbitrate requiring Citibank to__ __ministerially complete the arbitration form filing and pay the AAA filing fee. Once Schultz__ __chose arbitration and demanded arbitration and elected to arbitrate, the matter was effectively__ __in arbitration except to file papers and pay fees, which were required to be paid 100% by__ __Citibank.    Citibank not only violated Schultz's right to arbitrate but it illegally filed the__ __disputes in state court rather than file the claim in arbitration as the forum chosen by the__ __parties.__    Citibank was made aware of every conceivable possible future route for the dispute in addition to Schultz's exemption from garnishment of his Social Security benefits and his demands for return of checks illegally written by Citibank in October 2022 from Schultz's out of state Social Security bank account. Schultz is 74 years old and does not need this nonsense. Multiple high level executives and/or attorneys are believed directly or indirectly involved with the 5/17/2023, 5/30/2023 credit report pull, a mere 3 days prior to the first 6/2/2023 lawsuit assigned to Judge Johnson and the 6/16/2023 lawsuit assigned to Judge Sandor.    The adverse action of filing the barred litigation a mere 3 days after pulling Schultz's credit report would allow the court to make a reasonable inference that this is the type of bad reputation debt collectors are accused of.    Get a debt collector or attorney involved and resources are wasted.    Citibank does NOT come into this litigation with clean hands which this Court should consider in ruling on the Motion to Compel Arbitration and Complaint. Citibank is liable for retaliation further finding that the credit pull was illegal.    Further, Citibank again frivolously pulled Schultz's credit report on 6/23/2023, obviously for concern over Schultz's 6/20/2023 Motion to Compel Arbitrate received electronically on 6/20/2023.    Again 3 days later, Schultz's credit report was pulled illegally for no real or imaginary purpose.    What did they look at? Why did they get another look on 6/23? What was the purpose? What do they see that was so important?    Who has received the credit report?    What was the Name of every person requesting and receiving it?    It is too late to try for Citibank to mount a defense when the credit request required the exact purpose which is missing and undisclosed from my credit reports. This matter has gotten out of control due to the frivolous conduct of Citibank and its refusal to arbitrate.    Citibank is not capable of complying with the FCRA and its obligation regarding credit reporting.    Citibank

70

1-6

should have mitigated damages by discontinuing credit reporting which is voluntary.    Citibank caused its own problems and litigation in the courts, rather than simple arbitration, is in the best interest of the parties.    Schultz is entitled to statutory damages of $1,000 per willful violation of the FCRA plus substantial 9 fold punitive damages due to repeated violations by Citibank.    Moreover, due to the repeated malicious and retaliatory violations, extinguishment of Citibank's claims are mandatory. Citibank's must arbitrate its claims with arbitrability decided by the arbitror, not the court, under the previously submitted Florida Supreme Court case of <u>Airbnb vs. Doe</u>, No. SC20-1167, March 3, 2022. Citibank is liable for the actions of its attorneys, employees and/or agents.    Schultz believes and asserts that he is entitled to $1,000 in statutory damages, pursuant to 15 U.S.C. § 1681 et seq.    Schultz believes and asserts that Citibank's actions were known to be obviously improper, illegal, unjustified, retaliatory, malicious, deliberate, willful and intentional.    Because Citibank's acts and omissions were done willfully, Schultz requests punitive damages. Schultz requests punitive damages against Citibank in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et seq. and other portions of § 1681 et seq, and to the extent permissible for the FDCPA similar provisions if such conduct is deemed to violate the FDCPA. For purposes of a default judgment, Schultz believes that the amount of such punitive damages should be no less than $9,000. Schultz is entitled to attorney's fees and costs, if any pursuant to 15 U.S.C. § 1681 et seq.    Schultz is entitled to any other relief that this Court deems appropriate and just under the circumstances.

WHEREFORE, Schultz, respectfully requests, inter alia, preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against Citibank and award damages including:

Actual filing fee and costs reimbursement and statutory damages of a minimum of $1,000 for each and every one of the 4 illegal credit pulls, or $4,000 pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

Punitive damages of at least $9,000 for each and every one of the 4 illegal credit pulls, or $36,000 pursuant to 15 U.S.C. § 1681n;

Attorney's fees and costs pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

An order temporarily and permanently enjoining Citibank, its agents, employees, assigns, attorneys or otherwise from directly or indirectly accessing Schultz's credit reports in the future;

An order directing Citibank and/or its assigns to permanently delete every Citibank account from every credit reporting agency file for Schultz and further permanently enjoining Citibank and/or assigns from any further reporting on Schultz's credit reports;

An order temporarily and permanently enjoining Citibank, its agents, employees, assigns, attorneys or otherwise from directly or indirectly filing, appearing in or continuing lawsuits against Schultz in any state court;

An order directing that no other court remedy exists for any of Citibank's claims and Citibank must submit within 30 days any and all claims promptly to binding private arbitration with the AAA with separate individual claims for each of the 7 accounts to separate arbitrators and pay 100% of the AAA filing fees in each case promptly as they become due and failure to comply shall deem any such claims null, void and uncollectible;

An order declaring each of every 7 Citibank's account claims null and void and uncollectible due to willful bad faith FCRA actions set forth herein;

An order directing that this Court, and no other state or federal court, will retain exclusive jurisdiction to enforce or consider enforcement of any final award issued by the AAA regarding arbitration of Citibank's 7 accounts;

An order directing counsel for Citibank, at its own expense, to file, on its own without help of Schultz in any way, any and all papers and pleadings to effectuate, within 30 days, the prompt and permanent SEALING of the entire record, including public access search and blocking, of any state court case filed against Schultz by Citibank and failure to submit proof of sealing state court cases to this Court, within 30 days, shall result in fines for Contempt for $1,000 per day for each account that has not been proven sealed, payable Schultz as the aggrieved party.

Any other relief that this Court deems appropriate and just under the circumstances.

1-8 Cause 1

72

## AS AND FOR A SECOND CAUSE OF ACTION

**Repeated Reprehensible Violations of the Fair Credit Reporting Act (FCRA)**
**Inaccurate Dates of First Delinquency; failure to promptly provide Permanent**
**Notice of DISPUTES and Permanent Notice of CLOSED Account Dates; etc.**

Schultz re-states, re-alleges, and incorporates herein by reference, the previous allegations in this case as if set forth fully in this cause of action.    Citibank has continued for almost a year to willfully furnish inaccurate, missing, misleading and incomplete information (without the mandatory FCRA dispute, closure, accurate Date of First Delinquency and other requirements) to every CRA, including Experian, Equifax and TransUnion relating to a consumer, Thomas Schultz, after Citibank received numerous notices of disputes from every CRA that numerous specific information was inaccurate, incomplete, misleading, missing or non-compliant and the information, was in fact, inaccurate, missing …or non-compliant. The multiple acts and practices alleged herein constitute willful violations of the FCRA.    The prohibition of knowingly furnishing of inaccurate, incomplete or non-compliant information described herein at length constitute unfair or deceptive acts or practices and willful violations of the FCRA and FDCPA.    The FCRA requires furnishers (such as Citibank) of information to CRAs to conduct an appropriate comprehensive investigation when the furnisher receives a notice of dispute from a CRA in accordance with the provisions of the FCRA, and to report the results of the investigation to the CRA.    In all of the numerous instances, Citibank did not conduct a meaningful investigation, or an investigation at all, when it received the numerous notices of dispute from every CRA regarding Schultz's disputes under the FCRA. The FCRA provides that if the completeness or accuracy of any information furnished by any person to any CRA is disputed to such person by any consumer, the information must be noted as disputed in the information reported by such person to any CRA. This provision does not require consumer disputes to be in writing.    Citibank continued to furnish information to CRAs without providing notice that such information is disputed by the consumer.    Moreover, a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation thereof since Citibank used false, deceptive, or misleading representations or means, in violation of the FDCPA.    In numerous instances, Citibank, directly or indirectly, has used false representations concerning the character, amount, arbitrability, legal status, date of first delinquency and collectability of claims. In numerous instances, Citibank, directly or indirectly, has failed to communicate to the CRA to which it reported a debt that the debt is disputed and permitted disputes to be frequently and routinely removed hundreds of times regarding Schultz from credit reports without justification. Representations of material fact that are false or misleading constitute deceptive acts or practices



2-1 CAUSE 2

prohibited by the the FCRA and FDCPA. In numerous instances, in the course of collecting debts from Schultz, Citibank, directly and indirectly, has frivolously represented to Schultz and every CRA, expressly or by implication, that the debts were valid and that Schultz had an obligation to pay the debts.    In truth and in fact, in numerous instances the material representations set forth by Citibank, including its state court actions, were false or Citibank did not have a reasonable basis for the representations at the time the representations were made. Therefore, all of its representations, including the state court barred unserved cases were false or misleading and constitute deceptive acts or practices in violation of both the FCRA and FDCPA.     In **Saunders v. Branch Banking**, 526 F.3d 142 (4th Cir. 2008), "After a full trial, the jury returned a verdict for Saunders, **awarding him $1,000 in statutory damages and $80,000 in punitive damages**…[as] **BB T violated its duties as a furnisher of information under FCRA, 15 U.S.C.A 1681s-2(b)(1), by failing to report the dispute**… The trial court also instructed the jury that it could find BB T had violated FCRA by failing to report the ongoing dispute only if the jury concluded that **BB T's conduct excused Saunders from making his payments on the loan**, i.e.,. if the jury considered the dispute meritorious…If a consumer notifies a CRA that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute.. § 1681i(a)(2)… **we cannot conclude that a punitive damages award of $80,000 is grossly excessive or arbitrary in this case**. BB T's conduct was **sufficiently reprehensible** to justify a punitive damages award, and remittitur of the current award would nullify any punitive or deterrent effect."    Following the jury finding in **Saunders**, Citibank's significantly worst reprehensible conduct excused Schultz from making his payments on Citibank's 7 credit cards which balances must be declared Null, Void and Unenforceable following **Saunders** for (a) failing to provide notice of the dispute at all times, (b) failure to report the account voluntarily closed with the date closed at all times, ( c ) failure to report and correct the inaccurate Date of First Delinquency and (d) failure to correct balance (balances are $0), payment and other errors and provide missing, inaccurate, misleading and incomplete data, after notice.    Not only did Citibank refuse to honor its 3 months of payment deferrals promised the public due to hurricane Ian, but Citibank retaliated against Schultz for filing CFPB complaints by the conduct set forth herein.    Not only could Citibank not report a late status but the balances are $0 with $0 payments due following **Saunders**.    This means that the state court actions can be simply disposed of by this Court by DISMISSAL WITH PREJUDICE as (a) never served mandatting dismissal, (b) were barred by the arbitration demands and only filed to harass since Schultz chose to arbitrate the dispute on May 3-5, 2022 before the frivolous filing of the state court cases. and ( c )    Schultz owes Citibank $0 following **Saunders**.    If this Court

2-2                                                                                                         74

dismisses the state court cases barred and never served, such decision would MOOT Schultz's PETITION and Motion to Compel Private Arbitration with the AAA and MOOT Schultz's Notice of Removal leaving Schultz's Complaint for FCRA and other violations having original subject matter jurisdiction in this Court.    This would save valuable judicial time and Citibank would not be prejudiced as it could file counterclaims of its frivolous claims with this Court. Moreover, Citibank could avoid paying 100% of arbitration fees of $50,000+ to the AAA for which it could not recover such arbitration fees or attorneys fees per the arbitration agreement. Citibank shareholders are best served by litigating all disputes in this Court, without arbitration, and by promptly settling the disputes here.    Schultz intends to promptly file a Motion for Summary Judgment in this case, without discovery, asking the Court to assign the matter to a Magistrate Judge for a Report Containing Facts and Recommendations for final disposition by this Court. This Court is authorized to declare the Citibank balances $0 on all 7 accounts following **Saunders** and to issue a permanent injunction to ensure that Citibank promptly permanently deletes all accounts and never violates the FCRA and the FDCPA nor file further state court actions against Schultz as all claims must be arbitrated.    This Court is authorized to issue all equitable and ancillary relief as it may deem appropriate in the enforcement of the FCRA and the FDCPA including the ability to order rescission or reformation of contracts, restitution, the refund of monies paid, and disgorgement to deprive a wrongdoer of ill gotten gain.    Citibank has engaged in knowing committing violations of the FCRA as described herein, which constitute a pattern or practice of violations. Citibank has violated the FCRA and FDCPA as described herein with actual knowledge or knowledge fairly implied on the basis of objective circumstances.    Schultz is entitled to relief, pursuant to 15 U.S.C. §§ 1692, 1681, and the Court's own equitable powers. Schultz respectfully requests that the Court enter a permanent injunction to prevent future violations of the FCRA and FDCPA by Citibank, award such relief, including statutory and punitive damages as the Court finds necessary to redress injury to Schultz resulting from Citibank's violations of the FCRA and FDCPA, including but not limited to, rescission or reformation of contracts, restitution of all past payments made to Citibank, the refund of monies paid, and the disgorgement of ill-gotten gain including awarding Schultz monetary civil penalties, including statutory damages of $1,000 per willful FCRA and FDCPA violation plus 9 to 80 fold punitive damages for each violation (for each of the 7 accounts) of the FCRA as alleged or implied in this Complaint further awarding Schultz the costs of bringing this action including reasonable attorneys fees, as well as such other and additional relief as the Court may determine to be just and proper.

2-3

*75*

**15 U.S. Code § 1681s–2 - Responsibilities of furnishers of information to consumer reporting agencies**

(a)Duty of furnishers of information to provide accurate information

  (1)Prohibition

    (A)Reporting information with actual knowledge of errors

A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

    (B)Reporting information after notice and confirmation of errors A person shall not furnish information relating to a consumer to any consumer reporting agency if—

      (i)   the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

      (ii) the information is, in fact, inaccurate.

  (2) Duty to correct and update information A person who—

    (A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

    (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,

shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

  (3) Duty to provide notice of dispute

If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

  (4) Duty to provide notice of closed accounts

A person who regularly and in the ordinary course of business furnishes information to a consumer reporting agency regarding a consumer who has a credit account with that person shall notify the agency of the voluntary closure of the account by the consumer, in information regularly furnished for the period in which the account is closed.

  (5) Duty to provide notice of delinquency of accounts

    (A)In general

A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the

*76*

*2-4*

agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account that immediately preceded the action.

Schultz alleges and provides evidence in detail that written disputes were filed with credit reporting agencies, Experian, Equifax and TransUnion, both by US certified Mail return receipt requested on 11/21/2022 but also repeatedly using the CFPB portal to insure prompt delivery and avoid disputes over receipt of disputes.    Moreover, in addition, Schultz filed identical disputes with the CFPB and Citibank to further afford Citibank with added notice and an opportunity to correct inaccurate data or delete accounts.    So Citibank obtained identical disputes from CRA's and from Schultz. Schultz could have sued early on but tried and tried and tried to afford Citibank with an opportunity to mitigate damages but Citibank loves litigation as a recalcitrant enterprise so here we are.    Citibank failed to comply with the above provision regarding its Duty to correct and update inaccurate information.    Citibank also failed to comply with the above provisions by failing to provide prompt PERMANENT notice of the Disputes on Schultz's credit reports, without removing or deleting the dispute notices frequently and wrongfully in violation of the Facially False Data advisory opinion of the CFPB.    Citibank also failed to comply with the above provisions by failing to promptly and PERMANENTLY provide notice of CLOSED accounts with the exact date of the voluntary account closure without the possibility to amend, erase, remove it in any way under the Facially False Data advisory opinion of the CFPB. Not only did Citibank delay reporting the dispute status and the account closure dates by many months but as the exhibits prove Citibank frequently illegally removes the mandatory PERMANENT CLOSED DATES and status and the mandatory PERMANENT DISPUTE status due to its stupidity and complete lack of knowledge of the Metro 2 compliance protocols. Citibank knows that credit scores may be affected by CLOSED and DISPUTE status so it deliberately removes the mandatory FCRA DUTY to report such data to HARM consumers believing that Citibank has a better chance to collect from consumers by violating its FCRA DUTIES. Citibank knows all the tricks of the trade to harm consumers but this Court must punish Citibank with a huge punitive damage award consistent with **Saunders** for worst violations.    $1,000,000 would be a low punitive damage award considering Citibank's conduct.    So at least $1,000,000 is requested by Schultz in this Cause of Action. Credit reporting is simply too complicated for even the most competent experts.    Credit reporting is optional and once Citibank repeatedly willfully violated the FCRA provisions, Citibank lost the right to report data due to privacy issues documented in Schultz's 30 page Debt Validation Notice to Citibank's counsel on May 3, 2023 also demanding arbitration and electing arbitration barring

2-5

77

Citibank's harassing lawsuit.  **Citibank also has failed in its Duty to provide the mandatory accurate Date of the First Delinquency, probably the most important data entry in credit reporting as evidenced by Director Rohit Chopra's 10/26/2022 warning about Facially False Data** and such violations would be consider WILLFUL FCRA violations without defenses of any kind.   Excerpts of highlights from **EXHIBITS 102-22 to 102-28** are listed below including the warning that   "**A VIOLATION IS WILLFUL WHEN IT IS INCONSISTENT WITH "AUTHORITIVE GUIDANCE" FROM A RELEVANT AGENCY**" INCLUDING THE CFPB's 10/26/2022 Facially False Data advisory opinion:

BUREAU OF CONSUMER FINANCIAL PROTECTION 12 CFR Part 1022 Fair Credit Reporting; Facially False Data AGENCY: Bureau of Consumer Financial Protection. ACTION: Advisory opinion. SUMMARY: The Consumer Financial Protection Bureau (Bureau) is <u>issuing this advisory opinion to highlight that a consumer reporting agency that does not implement reasonable internal controls to prevent the inclusion of facially false data, including logically inconsistent information, in consumer reports it prepares is not using reasonable procedures to assure maximum possible accuracy under section 607(b) of the Fair Credit Reporting Act (FCRA)</u>.…

Inaccuracies in consumer reports can, in part, be attributed to consumer reporting agencies failing to maintain reasonable procedures, such as business rules, to prevent the inclusion of <u>facially false data, including logical inconsistencies relating to consumer data and/or the status or other information associated with consumer accounts</u>, when preparing consumer reports. Courts have recognized that in "certain instances, inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures[.]" [16] <u>The Bureau is issuing this advisory opinion to highlight that the legal requirement to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individuals about whom the reports relate includes, but is not limited to, procedures to screen for and eliminate logical inconsistencies to avoid including **facially false data** in consumer reports.</u>

<u>There are many logical inconsistencies that could result in inaccurate, facially false data being included on consumer reports in violation of section 607(b)</u>. The following is a non-exhaustive list of examples of some of the types of logical inconsistencies that reasonable procedures to assure maximum possible accuracy would screen for and eliminate:

**Inconsistent Account Information or Statuses**

<u>A consumer reporting agency's policies and procedures should be sufficient to detect tradelines with account statuses or codes that are plainly inconsistent with other information reported for that same account, such that, if included in a consumer report, at least one item of information therein would necessarily be inaccurate. Such inconsistencies may include:</u>



78

• An account whose status is paid in full, and thus has no balance due but nevertheless reflects a balance due; [17]

• An account that reflects an "Original Loan Amount" that increases over time, an impossibility by definition; [18] and

• Derogatory information being reported on an account, although that derogatory information predates an earlier report that did not include the derogatory information.[19]

**A consumer reporting agency's policies and procedures should further identify and prevent illogical reporting of a Date of First Delinquency in connection with an account.**[20] Section 605(a) of the FCRA identifies categories of information that cannot be included in a consumer report after a certain amount of time.[21] For example, a consumer reporting agency may not include on a consumer report accounts placed for collection or charged to profit and loss that antedate the report by more than seven years and 180 days.[22] This provision enables consumers to move beyond their past and rebuild their credit following a delinquency. **The Date of First Delinquency provided by a furnisher must reflect the month and year on which the delinquency being reported commenced.**[23] When accurate, that date corresponds with the start of the time period that, once elapsed, precludes the delinquency from remaining on a consumer report under FCRA section 605(a). A Date of First Delinquency that is more recent than the start of a delinquency may lead a report user to believe a consumer had financial difficulty more recently than is the case. **Similarly, a Date of First Delinquency reflected on a report where a consumer is not in fact delinquent could cause a user to inaccurately believe that the consumer is delinquent.** Examples of an illogical Date of First Delinquency may include:

• **A Date of First Delinquency reported for an account whose records reflect no delinquency, such as through activity reflecting a current account (complete history of timely payments, $0 amount overdue) or through a current account status code;** [24]

- A Date of First Delinquency that post-dates a charge-off date; and
- A Date of First Delinquency, or date of last payment, that predates the account open date (for non-collection accounts).

**Illogical Information Relating to Consumers**

A consumer reporting agency's policies and procedures should also identify logical inconsistencies in consumer information, such that, if included in a consumer report, some of the information therein would necessarily be inaccurate. Such inconsistencies may include:

• Impossible information about consumers—for example, a tradeline that includes a relevant date, such as a date of account opening, account closing, date of last payment, or **date of first delinquency**, for an account that is in the future—an obvious

impossibility—or for an individual account that either predates that consumer's listed date of birth or that is so far in the past ( *e.g.*, January 1, 1800) that it must predate every living consumers' date of birth, as individuals cannot open an account before they are born; [25] and

• Information about consumer accounts that is plainly inconsistent with other reported information, such that one piece of information must be inaccurate—for example, if every other tradeline is reporting ongoing payment activity, while one tradeline contains a "deceased" indicator, reasonable policies and procedures should identify the inconsistency and the consumer reporting agency should prevent the inclusion of the inaccurate information in consumer reports it generates.[26]

The Bureau is issuing this advisory opinion to remind consumer reporting agencies that the failure to maintain reasonable procedures to screen for and eliminate logical inconsistencies, **to prevent the inclusion of facially false data in consumer reports, is a violation of their FCRA obligation to "follow reasonable procedures to assure maximum possible accuracy" under section 607(b) of the FCRA.**

In addition to provisions authorizing Federal and State enforcement,[36] the FCRA contains two provisions relating to civil liability to consumers for noncompliance. Section 617 provides that "any person who is *negligent* in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to" the consumer's actual damages, and costs and reasonable attorney's fees.[37] **Section 616 provides that "any person who *willfully* fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to" actual or statutory damages of up to $1,000 per violation, such punitive damages as the court allows, and costs and reasonable attorney's fees**.[38] **A violation is willful when it is inconsistent with "authoritative guidance" from a relevant agency**.[39] As with any guidance issued by the CFPB on the FCRA, or predecessor agencies that were responsible for administering the FCRA prior to the CFPB's creation, consumer reporting agencies risk liability under Section 616 if they violate the FCRA in a manner described in this Advisory Opinion, regardless of whether the consumer reporting agencies were previously liable for willful violations prior to its issuance.

    Rohit Chopra, Director, Consumer Financial Protection Board

Schultz attached **EXHIBIT 102-1 thru 102-18** which clearly disclosed that Citibank reported to Experian, Equifax and TransUnion which stated on Schultz's credit reports over almost a one year period that the Date of First Delinquency was either 7/2022 or 8/2022 despite the inconsistencies and fact that Schultz was not delinquent as Citibank statements provided in **EXHIBIT 101** proved there was not a delinquency and Citibank was writing automatic drafts

80



(also see **EXHIBIT 101**) on Schultz's checking account thru October 2022 and reporting payments to every CRA and reducing balance data.    While the Facially False Data should have been known and corrected, Citibank willfully reported the inaccurate Date of First Delinquency as 7/2022 and 8/2022 knowing it would destroy Schultz's perfect payment record. The takeawy from the CFPB advisory opinion is that **Citibank's violation is WILLFUL as it is inconsistent with the CFPB advisory opinion dated 10/26/2022.**    Therefore, Citibank's violations are ALL **WILFULL** and there is absolutely no possible defense to Schultz's claims for multiple WILFULL FCRA violations.    The Facially False Data warnings and obligations also apply to the reporting of a DISPUTE and CLOSED accounts and dates, since once DISPUTED and CLOSED and locked into a file, accounts must be permanently listed as such since a locked entry cannot be overridden by either a CRA or a furnisher if required controls existed. Thus, every one of the 100 times Citibank removed either the DISPUTE designation and correct CLOSED designation, Citibank willfully violated the FCRA.    Applying **Saunders** is easy.    Citibank should expect punitive damages to be in the millions of dollars.    Schultz tried in September 2022 to mitigate damages by asking Citibank to delete credit reporting and seeking a 3 month payment deferral promised due to hurricane Ian but Citibank retaliated and now must accept responsibility for its illegal conduct. Schultz's exhibits document the widespread omission of payment data required on the accounts including the amounts and dates paid provided by most creditors to help CRA's comply with their obligations. Many months just have blanks with no data at all and Citibank just has failed miserably in reporting data via Metro 2 protocols so it is not Metro 2 Compliant mandating deletion of credit files for Schultz's accounts.    Since following the **Saunders** jury decision invalidated payment claims due to the FCRA violations, Schultz owes Citibank $0 and Schultz was never late, mandating deletion of Citibank's accounts from every CRA and imposing liability for willful FCRA violation. Stated in another way by the **Saunders** jury, compliance with the FCRA is a precondition for creditors to demand credit card payments from a consumer.    Alternatively stated, creditors may not report payments due by consumers unless and until creditors have unconditionally complied with all of its FCRA obligations.    Citibank's credit card agreement contacted a valid arbitration to have any and all disputes arbitrated. Citibank wrote it and Citibank was required to arbitrate when Schultz demanded arbitration in his Mr 3-5 2023 demands to Citibank barring this action entirely and filing multiple Motions to Compel Arbitration and to dismiss in state court.    State and federal courts should not complain about Schultz's pleadings when Citibank drew FIRST BLOOD by litigating rather than arbitrating as

agreed.    Schultz would have been happy to arbitrate, as the contract requires arbitration, rather than file this federal court case but no matter what Schultz does, Citibank will do the opposite to unreasonably multiply the proceedings.    For sure, Citibank will now NOT want to litigate in federal court and will move to compel arbitration while it stayed silent in state court. Schultz has double the proof and evidence above and beyond what was included herein but it is extremely burdensome to produce at this time especially when all of the evidence has been produced and is in possession of Citibank, Since Schultz provided indisputable evidence that Citibank violated the FCRA, the burden shifts to Citibank to disclose proof of every credit report filing to demonstrate that it has complied with the FCRA.    It cannot and it will not. Now that Schultz has spent so much time and effort in going in circles, Schultz wants the dispute resolve in this federal court as an arbitrator is incapable of ruling on every issue raised by Schultz.    On the other hand, Schultz's petition to arbitrate Citibank's frivolous state court claims, after the state courts' inaction, refers to just Citibank's state court claims which can and should be disposed of easily by this Court as the cases were never served and frivolous under **Saunders** and pursuant to the **arbitration** agreement which requires an **arbitrator**, not a court or judge, to rule on arbitrability.    Schultz's 11/21/2022 18 page letter with 28 exhibits included some allegations such as: "Discrimination - Deceptive trade practices - failure to honor 3 months of payment deferrals due to hurricane Ian and covid-19 promised publicly" - Citibank acknowledged it offered all affected consumers relief but discriminated against Schultz - **Citibank never reported any of my accounts as disputed on credit reports and the 5 day deadline expired months ago - Citibank failed to report accounts as disputed on credit reports** - immediate deletion of all accounts required to further prevent false data reporting - Citibank reported inaccurate payment data - **Citibank reported 60 day late payments although there was no late payment and 100% payment record** - Citibank concealed data from paper reports - "Since Citibank wrote the terms of the contract, providing **ARBITRATION,** I insist that Citibank be compelled to file **arbitration** before resolving my disputes on my credit reports". - "Thus, Citibank's accounts on my credit reports must be permanently DELETED from my credit reports absent completion of arbitration to determine the appropriate reporting of disputed data herein on my credit reports". - "The Federal Equal Credit Opportunity Act (ECOA) prohibits discrimination especially against retaliation where consumers exercise, in good faith, any right under the Consumer Credit Protection Act, FCRA, FCBA, or any other consumer protection regulation. The ECOA makes it illegal to discriminate against victims of hurricane Ian" - "the impact of Citibank's blanket policy of NO relief for

2-10



what was promised ...counts as discrimination." - "In the **Saunders** case versus BB & T, the jury awarded the consumer $1,000 in statutory damages and punitive damages of $80,000 finding BB & T had intentionally violated its duties under the FCRA 15 USCA 1681s-2(b)(1), by failing to report the dispute on credit reports". - "Again, despite notice of my clear and known payment deferral dispute with 10+ reps over multiple days caused by COVID-19 and hurricane Ian, Citibank never reported my dispute with credit reporting agencies as required within the 5 day deadline." -   "If Citibank wants me to pay, it can seek **arbitration**." - Citibank affirmatively and unconditionally affected offered consumers unsolicited 3 months of payment deferrals for affected consumers of hurricane Ian and COVID-19. I accepted expected promised relief."

The 11/21/2022 letter clearly put Citibank on Notice that it had violated the FCRA for failing to report the 7 accounts as disputed in willful violation of the FCRA providing punitive damages following **Saunders** (7 times $80,000 = $560,000)   Citibank continued to fail to permanently report the dispute status on Schultz's report even after being notified by every CRA.   In addition, in the 11/21/2022 letter, Schultz repeatedly demanded arbitration and elected arbitration as the sole contractual available dispute resolution forum.   As documented numerous times, Schultz further elected arbitration and demanded arbitration on 8 CFPB complaints including the May 3-5, 2023 complaints to Citibank's debt collector, Ras LaVrar. Citibank was required to arbitrate, not litigate its claims which were never served.

Citibank was given multiple notices to comply with the FCRA obligations but it refused subjecting Citibank to punitive damages in the millions of dollars following **Saunders**.

On May 3-5, 2023, Schultz filed Debt Validation Notices thru the CFPB portal not only demanding Arbitration but demanding a STOP, CEASE and DESIST of all communication directly and indirectly by Citibank and its debt collectors.   Citibank illegally and frivolously attempted to EVADE the cease and desist obligations by filing 3 state court cases, not one or two, for smaller amounts knowing that Schultz's mailbox would be full of solicitations and postcard from attorneys looking for business and mail would be discovered by neighbors as mail delivery is terrible.   Schultz received at least 30 solicitations with the case captions and case numbers on various envelopes letters stating that the letters were from lawfirms. Cease and desist means explicitly what it implies.   Schultz obtained notices of court filings from

2-11

83

attorneys mailing advertisements which even included a copy of the Complaint with a prohibited partial account number filed in violation of state court Rule 2.425. All of Schultz's neighbors know Schultz is being sued as a result of the deliberate violation of the cease and desist demand. Such conduct violates the spirit of the FDCPA for which this Court has subject matter jurisdiction to punish Citibank for malicious violations thereof.   Since Citibank only had the remedy of Arbitration, the 3 state court cases were barred as arbitration was the only available remedy.   Schultz demands the maximum allowable remedies on every possible violation and issue.

WHEREFORE, Schultz, respectfully requests, inter alia, preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against Citibank and award damages including:

Actual filing fee and costs reimbursement and statutory damages of a minimum of $1,000 for each and every one of the multiple wilful FCRA violation for each 7 accounts for every day the violations existed, pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

Punitive damages of at least $80,000 for each and every one of the multiple FCRA willful violations for each of the 7 accounts pursuant to 15 U.S.C. § 1681n;

Attorney's fees and costs pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

An order temporarily and permanently enjoining Citibank, its agents, employees, assigns, attorneys or otherwise from directly or indirectly accessing Schultz's credit reports in the future;

An order directing Citibank and/or its assigns to permanently delete every Citibank account from every credit reporting agency file for Schultz and further permanently enjoining Citibank and/or assigns from any further reporting on Schultz's credit reports;

An order temporarily and permanently enjoining Citibank, its agents, employees, assigns, attorneys or otherwise from directly or indirectly filing, appearing in or continuing lawsuits against Schultz in any state court;

An order directing that no other court remedy exists for any of Citibank's claims and Citibank must submit within 30 days any and all claims promptly to binding private arbitration with the AAA with separate individual claims for each of the 7 accounts to separate arbitrators and pay

2-12                                                                                                84

100% of the AAA filing fees in each case promptly as they become due and failure to comply shall deem any such claims null, void and uncollectible;

An order declaring each of every 7 Citibank's account claims null and void and uncollectible due to willful bad faith FCRA actions, under **Saunders**, set forth herein;

An order directing that this Court, and no other state or federal court, will retain exclusive jurisdiction to enforce or consider enforcement of any final award issued by the AAA regarding arbitration of Citibank's 7 accounts;

An order directing counsel for Citibank, at its own expense, to file, on its own without help of Schultz in any way, any and all papers and pleadings to effectuate, within 30 days, the prompt and permanent SEALING of the entire record, including public access search and blocking, of any state court case filed against Schultz by Citibank and failure to submit proof of sealing state court cases to this Court, within 30 days, shall result in fines for Contempt for $1,000 per day for each account that has not been proven sealed, payable Schultz as the aggrieved party.

Any other relief that this Court deems appropriate and just under the circumstances.

85

2-13

## NOTICE OF REMOVAL OF STATE COURT ACTIONS
UNDER 28 U.S.C. § 1441(a)    Federal Question    FCRA & FDCPA
Removed from County Court, Orange County, Florida
Case Nos.: 2023- SC-036214-O; SC-032958-O; SC-042459-O

TO: Clerk of the U.S. District Court for the Middle District of Florida, Orlando Division

PLEASE TAKE NOTICE THAT Thomas Schultz ("Schultz"), Pro Se (non-attorney) Removing Defendant, hereby removes to this Court the state court actions described herein, pursuant to U.S.C. §§ 1331, 1441, 1446, and 1447.    Pursuant to 28 U.S.C. 1446(d), copies of this Notice of Removal with all required filed documents attached to the Notice of Removal are being served on party Citibank, N.A. at the address listed in the state court cases and are being filed in person with the Clerk of the County Court for the 9th Judicial Circuit in and for Orange County, Florida in Orlando on the 3rd floor in the Orange County Courthouse to be scanned into the on-line docketing system with a filed courtesy copy forwarded by the Clerk of the Court to the respective County Court judges.

28 U.S. Code § 1441 - Removal of civil actions (a) GENERALLY.—Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S. Code § 1446 - Procedure for removal of civil actions. (a) GENERALLY.—A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action….(d)NOTICE TO ADVERSE PARTIES AND STATE COURT.—
Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

Schultz re-states, re-alleges, and incorporates herein by reference, the previous allegations on pages 1 thru 85 in this pleading as if set forth fully in this Notice of Removal.  **This Court has jurisdiction over this matter under 15 U.S.C. § 1681p which states: "An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy…" This Court**





**also has jurisdiction over this matter under 15 U.S.C. § 1692k(d) "§ 1692k - Civil liability...(d) JURISDICTION    An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy..." This Court has jurisdiction over this matter under 28 U.S.C. § 1331 "Federal question    The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."**    Federal and State courts generally require initial civil cover sheet and other forms to disclose the existence of arbitration agreements and all other related proceedings, court or otherwise.    Courts need to know before a complaint is filed whether arbitration should be compelled to save valuable judicial resources and avoid having a case compelled to arbitration after significant progress in a court case for absolutely no purpose.    Furthermore, courts need full disclosure of related proceedings for obvious jurisdictional purposes disclosing real issues involving the exact nature of the dispute between the parties.    State Court Appendix form 1.997 Civil Cover Sheet requires complete disclosure of known related cases that have been filed which Citibank falsely said there were none even though it filed 3 identical cases to have cases assigned to different judges.    Citibank was required to disclose all of Schultz's past FCRA and CFPB complaints, including demands for arbitration made by Schultz on 11/22/2022 and on May 3-5 2023 as set forth at length herein. A state court complaint would merely supplement required initial proceeding disclosures.    Disclosure of the FCRA disputes would certainly document that the dispute involves a federal question actionable in federal courts having subject matter jurisdiction. So any state court complaints are not stand alone pleadings but supplemental.    The concealment of arbitration agreements from the required disclosures in both a complaint and the civil cover questions is fatal as intended to evade rights of Schultz.    Furthermore, the concealment of numerous existing FCRA and FDCPA complaints and failure to disclose them in robo-signed lawsuits is fatal for Citibank. After Citibank received Schultz's May 3-5, 2023 subsequent demand for arbitration and election to arbitrate requiring Citibank to arbitrate, not file a lawsuit, along with Schultz's cease and desist notice, Citibank retaliated by violating the FCRA by pulling Schultz's credit report (See CAUSE 1) and **filing 3 barred state court actions which were never served making them null and void** for which the Complaints have been restricted from viewing on-line and in the court's public record computers at the Courthouse by Schultz.    The purpose of the 3 state court cases was to have Schultz's mailbox and his neighbors filed with notices of lawsuits as Citibank was barred from communications under the cease and desist notices.    **Since Schultz**



R-2

87

**has never been served any of the 3 summonses and Complaints, the time to file this Notice of Removal has not yet begun to toll so it is certainly timely**. The Notice of Removal is being filed within thirty (30) days of service on the only defendant.    Since there has not been any service, this Notice of Removal is timely filed under 28 U.S.C.§ 1446(b).    Removal to this Court is proper as the Orlando County Court, where the actions were originally filed, is located within this federal court district, a few blocks away.    Schultz certifies that he will promptly file a copy of this Notice of Removal with the Clerk of the Orange County Court in Orlando and give prompt notice of same to counsel for Citibank. As documented in detail in Schultz's Complaint filed contemporaneously and jointly herewith, on June 20, 2023, Schultz filed in 2 state court cases, (**SEE EXHIBIT 103**, attached hereto) "**Motions to Compel Mandatory Private Binding Arbitration with the AAA and to Stay This Case Pending the Parties' Completion of Private Arbitration, or, Alternatively Dismissing the Cases as Null and Void Ab Initio as Schultz Chose Arbitration and Arbitration was Pending and Effective in May 2023 and this Case was Abandoned and Never Served Since E-Filing on June 2, 2023 and June 16, 2023**.    Then, on June 26, 2023, Schultz filed (**SEE EXHIBIT 104**, attached hereto) a "**Notice of US Supreme Court Case (decided June 23, 2023) Holding that Litigation is Automatically Stayed Pending Appeal of Order Denying Motion to Compel Arbitration In Further Support of the Motion to Compel Arbitration**…" Then on June 29, 2023, Schultz, filed (**SEE EXHIBIT 105**, attached hereto) a "**Supplemental Argument and Caselaw that there is NOT a Small Claims Court in Florida as the Florida Small Claims Rules Do Not Create a Small Claims Court to Prevent Arbitration In Further Support of the Motion to Compel Arbitration.**"    Then, on July 6, 2023, Schultz filed (**SEE EXHIBIT 106**, attached hereto) a "**Supplemental Argument and Caselaw Following Supreme Court of Florida, AIRBNB v. DUE, March 31, 2022 Decision, "Citibank's Agreement Clearly and Unmistakably Evidences the Parties' Intent to Empower an Arbitrator, Rather Than a Court, to Resolve Questions of Arbitrability" Mandating Binding Private Arbitration In Further Support of …Motion to Compel Arbitration…**"

Citibank failed to respond to Schultz Motions to Compel Arbitration so it should be granted as unopposed, mandating dismissal of the state court cases or compelling Citibank to file arbitration papers with the AAA and pay 100% of the arbitration fees for the 3 cases.

*88*

R-3    arbitration.    In any event, Schultz's Motions to Compel Arbitration effectively stayed the state

court cases until ruled on so Citibank was barred from proceeding.    However, the State courts have not given any guidance about whether they will illegally continue or prevent continuation with proceedings so Schultz has prudently removed the action to prevent improper barred actions by either Citibank or the State Courts.    Schultz's Complaint is absolutely clear that the sole dispute with Citibank involves entirely about Citibank's illegal and numerous repeated and continuous Willful FCRA violations for which this Court has subject matter jurisdiction. The **Saunders**' jury, **Saunders v. BB T**, 526 F.3d 142 (4th Cir. 2008), on fewer of the same identical violations, found that **BB T's had violated FCRA by failing to report the ongoing dispute** and **BB T's conduct excused Saunders from making his payments on the loan awarding Saunders $1,000 statutory damages and punitive damages of $80,000. Following Saunders is easy so Schultz has absolutely no payment or balance liability to Citibank and Schultz has valid claims against for over $1,000,000 due to Citibank's numerous willful violations of the FCRA.    The CFPB advisory opinion dated 10/26/2022 about Facially False Data made each and every one of Citibank's FCRA violations WILLFUL by operation of law and not subject to challenge.**    Not only does Citibank willfully violate the FCRA by failing to disclose numerous required duties but now Citibank again willfully conceals these same matters and ongoing disputes from the state courts.    This federal court is the only Court to properly decide the exact damages Citibank must pay Schultz based on the obvious willful FCRA violations proven by Schultz's evidence.    No matter how Citibank may lie in civil cover sheet disclosure requirements and have a bare damage claim unsupportable by facts and law, federal question jurisdiction is still found where Schultz's right to relief requires resolution of a substantial question of federal law due to FCRA willful violations.    See **Franchise Tax Bd**, 463 U.S. at 13. Citibank willfully omitted the arbitration agreement and FCRA disputes and such evasion and omission, of a necessary federal question from filing, documents federal question jurisdiction still remains.    See **Franchise Tax Bd., supra**.    Citibank's $0 claim owed by Schultz is entirely preempted by the FCRA mandating resolution of damages to be awarded to Schultz by Citibank.    There is nothing even possible for the state court to decide as, if this Court properly follows **Saunders** on deciding the FCRA claims to which it obviously has subject matter jurisdiction, the Court will ultimately rule that Schultz owes Citibank $0 and Citibank owes Schultz $1,000,000 for Statutory damages and punitive damages the exact amount of which to be decided by the Court.    Citibank will not be prejudiced by the Notice of Removal as this federal Court can grant Citibank relief for monetary damages if Citibank can prevail.    Based upon the facts, the federal court is the sole

R-4    89

court having the requisite authority to rule on all of the relief requested by Schultz and Citibank.    Schultz seeks important injunctive and other relief including amounts that the state court does not have jurisdiction to consider.    This Court also has the inherent power to consolidated state and federal cases into this single federal case, such as in this dispute where there is a single issue, the FCRA, to rule on.    Having multiple state and federal court cases and multiple state court judges [we now have 4 judges] rule on the same issues makes no sense. Citibank caused this fiasco as its only available remedy was Arbitration with the Arbitrator ruling on arbitrability, not a court or judge pursuant to the Florida Supreme Court binding ruling in **Airbnb**. Schultz promptly moved to compel arbitration, on 6/20/2023, as soon as he found out about Citibank's prohibited cases from mailings and advertisements from attorneys looking for business.    Schultz expected the state court to simply rule on a simple matter to compel arbitration as **Airbnb** ruled that an arbitrator, not a court or judge, decides arbitrability. Obviously, Schultz needs a federal court to protect Schultz rights for relief under the FCRA and FDCPA as requested.    This Court must also consider the outrageous illegal actions and conduct of Citibank.    Since the 3identical state court cases have never been served, this Court can just dismiss the 3 state court cases and require Citibank to file its counterclaims in federal court so it can resolve all disputes in one forum in one case instead of multiple lawsuits in both state and federal court in addition to Arbitration. Citibank plans to file at least 7 state court actions to shop for different state court judges and unreasonably multiply proceedings instead of litigating this matter in this Federal Court.    Schultz's papers are obvious that Citibank has willfully violated the FCRA and FDCPA by its numerous and ongoing illegal conduct including the intentional Facially False Data submissions warned of by the CFPB advisory opinion of 10/26/2022 making every violation WILLFUL.    Citibank's use of state courts to conceal the real dispute and to evade damages for its outrageous FCRA violations must not be permitted especially since Citibank's claims have been extinguished following the **Saunders** decision.

**WHEREFORE,** Thomas Schultz Pro Se (non-attorney) Removing Defendant in the above-captioned unserved, barred, illegal, frivolous and abandoned state court civil actions filed, pending, and automatically stayed by Schultz's attached Motions to Compel Private Arbitration filed in the County Court For The 9th Judicial Circuit In and For Orange County Florida under known and ficticious Case Numbers 2023-SC-036214-O, 2023-SC-032958-O, 2023-SC-042459-O, and 2023-SC-xxxxxx-O are REMOVED to this United States District



Court, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1447 and the State courts shall proceed no further and any direct or indirect attempts of any kind to continue the removed cases in state court, after the Notice of Filing Notice of Removal has been filed with the Clerk of the state court and served on Citibank, shall each constitute an intentional Contempt of Court punishable with serious consequences for violators.


_____ dated: July 16, 2023
Thomas Schultz, Pro Se (non-attorney) Plaintiff/Petitioner/Removing Defendant
8919 Heritage Bay Circle
Orlando, Florida    32836
Telephone:    321-325-3010 (not voicemail enabled--no texts as unsecured)
Email:        (No secured email available--use USPS first class mail)


### Certificate of Service by First Class USPS Mailing

I, Thomas Schultz, certify that a true and correct copy of the foregoing filed Notice of Removal, Complaint and Petition to Compel Private Arbitration… containing 91 pages plus Exhibits 101-106 was furnished by first class U.S. Mail on July _____ , 2023 to Attorneys for Citibank, N.A., Lead Attorney Flynn LaVrar, Esq., Jennifer K. Klein, Esq., Law Office of RAS LaVrar, LLC at 1133 S. University Drive, 2nd Floor Plantation, FL 33324.

_____ dated: July \_\_\_\_, 2023
Thomas Schultz, Pro Se (non-attorney) Plaintiff/Petitioner/Removing Defendant
8919 Heritage Bay Circle
Orlando, Florida    32836

R-6